FOLGERS ARCHITECTS LIMITED, ASSIGNEE OF FOLGERS ARCHITECTS & FACILITY DESIGN, INC., A DELAWARE CORPORATION, APPELLEE AND CROSS-APPELLANT, V. RICHARD A. KERNS ET AL., APPELLANTS AND CROSS-APPELLEES.

633 N.W. 2d 114

Filed September 14, 2001.   Nos. S-98-1326, S-98-1327, S-98-1328.

P. Shawn McCann, of Sodoro, Daly & Sodoro, for appellants.

Gregory C. Scaglione, of Koley, Jessen, Daubman, & Rupiper, P.C., L.L.O., for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

STEPHAN, J.

In these consolidated actions, Folgers Architects Limited (FAL), as the assignee of Folgers Architects & Facility Design, Inc. (FAFD), seeks to recover professional fees relating to several apartment construction projects. Claims were asserted against Richard A. Kerns, as well as various corporations and limited partnerships. Following a bench trial, the district court for Douglas County entered judgment in favor of FAL on all but one of the projects. The defendants below appealed, and FAL cross-appealed. The Nebraska Court of Appeals affirmed in part, affirmed in part as modified, reversed and dismissed in part, and in part vacated and set aside the judgment of the district court. *Folgers Architects v. Kerns*, 9 Neb. App. 406, 612 N.W.2d 539 (2000). FAL filed a petition for further review. A second petition for further review was filed jointly on behalf of Kerns; Burwick Apartments, Ltd.; Thornberry Apartments, Inc.; Sussex Place Apartments, Inc.; Ashberry Apartments, Inc.; and Walton Heath Apartments, Inc. We granted both petitions for further review.

## I. BACKGROUND

### 1. FACTS

The facts relevant to the issues on appeal are set forth in detail in the opinion of the Court of Appeals and briefly summarized here. In late 1992 or early 1993, Jeffrey Anderzhon, an architect associated with Anderzhon Architects, Inc. (AAI), met with

Kerns to discuss the possibility of AAI's providing architectural services for the development of several apartment complexes. Several breakfast meetings were subsequently held to discuss the development of the apartment complexes, which were to include projects known as Thornberry, Burwick, Walton Heath, Ashberry, Sussex Place, Greely, Wingpoint, Devonshire, and Kennamare. It was agreed that the design of the projects would be based on two other apartment complexes designed by Anderzhon and that fees would be paid on a per unit basis. Anderzhon was to be paid a $5,000 initial retainer fee for each project and would issue invoices for his services as work progressed. It was further agreed that as each apartment project progressed, ownership entities would be formed and a written standard form contract prepared by the American Institute of Architects (AIA), known in the industry as a B181 contract, would be executed by the ownership entities and the architect. The written contracts were to comply with the requirements of Housing and Urban Development.

In April 1993, Anderzhon began providing architectural services for the projects. In July 1994, AAI merged its operation with FAFD, although Anderzhon retained the accounts receivable for the work already performed by AAI. All services provided by Anderzhon and FAFD after July 1994 were billed by FAFD.

On the Burwick and Walton Heath projects, ownership entities were formed and B181 contracts were executed. On the Thornberry, Ashberry, and Sussex Place projects, ownership entities were formed but no written contracts were executed. On the Greely, Wingpoint, Kennamare, and Devonshire projects, no entities were formed and no written contracts were executed. Anderzhon and FAFD provided services for all projects. Due to a lack of funding, none of the projects were completed, and in May 1995, Anderzhon sent Kerns a letter of termination.

In 1995, 1996, and 1997, FAFD filed separate lawsuits which were subsequently consolidated against Kerns; Burwick Apartments, Ltd.; Thornberry Apartments, Inc.; Sussex Place Apartments, Inc.; Ashberry Apartments, Inc.; and Walton Heath Apartments, Inc. On or about May 1, 1997, Anderzhon resigned his position with FAFD. At that time, Anderzhon assigned to FAFD the accounts receivable of AAI for architectural services

provided on the projects prior to July 1994. In 1997, FAFD discontinued its operations and assigned its accounts receivable to JLK Enterprises, which Anderzhon referred to as an "assignment entity." Subsequently, FAL purchased the accounts receivable of JLK Enterprises, which included the accounts at issue in these actions.

At the close of trial, FAL sought and received leave to file a consolidated petition to conform the pleadings with the evidence presented. On August 27, 1998, FAL filed a consolidated petition naming as additional defendants Burwick Apartments, Inc.; Thornberry Apartments, Ltd.; Sussex Place Apartments, Ltd.; Ashberry Apartments, Ltd.; and Walton Heath Apartments, Ltd. On September 8, these newly added defendants filed a special appearance, objecting to the jurisdiction of the court for the reason that no sufficient and proper service of summons had been served upon them. The district court overruled the special appearance.

## 2. JUDGMENT OF DISTRICT COURT

### (a) Burwick and Walton Heath Projects

On November 12, 1998, the district court entered an order of judgment. As to the Burwick and Walton Heath projects, the district court found a breach of enforceable written and oral contracts between Anderzhon (the architect) and Kerns; Burwick Apartments, Inc.; and Burwick Apartments, Ltd. The court also found a breach of enforceable written and oral contracts between the architect and Kerns; Walton Heath Apartments, Inc.; and Walton Heath Apartments, Ltd. Furthermore, the district court found that Kerns and the above entities were liable to FAL, as assignee, on the theories of promissory estoppel and quantum meruit. Judgment was therefore entered against Kerns; Burwick Apartments, Inc.; and Burwick Apartments, Ltd., in the principal amount of $98,433.46, plus prejudgment interest of $62,097.78 and postjudgment interest at 18 percent per annum. Judgment was entered against Kerns; Walton Heath Apartments, Inc.; and Walton Heath Apartments, Ltd., in the principal amount of $200,238.24, plus prejudgment interest of $126,323.10 and postjudgment interest at 18 percent per annum.

### (b) Thornberry, Ashberry, and Sussex Place Projects

With respect to the Thornberry, Ashberry, and Sussex Place projects, the district court found a breach of enforceable oral contracts between the architect and Thornberry Apartments, Inc.; Thornberry Apartments, Ltd.; Ashberry Apartments, Inc.; Ashberry Apartments, Ltd.; Sussex Place Apartments, Inc.; and Sussex Place Apartments, Ltd. The court also found all of the above ownership entities liable to FAL on the theories of promissory estoppel and quantum meruit. Judgment was entered against Thornberry Apartments, Inc., and Thornberry Apartments, Ltd., in the principal amount of $116,668.48, plus prejudgment interest of $49,068.15. Judgment was entered against Sussex Place Apartments, Inc., and Sussex Place Apartments, Ltd., in the principal amount of $72,470.36, plus prejudgment interest of $30,479.61. Judgment was entered against Ashberry Apartments, Inc., and Ashberry Apartments, Ltd., in the principal amount of $37,218.32, plus prejudgment interest of $15,653.46.

### (c) Greely, Wingpoint, and Kennamare Projects

With respect to the Greely, Wingpoint, and Kennamare projects, the district court found a breach of an enforceable oral contract for Kerns to pay the architect $5,000 per project as an initial fee or retainer. The court also determined that there was sufficient evidence to find Kerns liable to FAL on these projects on the theories of promissory estoppel and quantum meruit. Judgment was entered against Kerns in the principal amount of $15,000, plus prejudgment interest of $6,308.71.

### (d) Devonshire Project

With respect to the Devonshire project, the district court found that FAL failed to satisfy its burden of proof on any cause of action.

### 3. JUDGMENT OF COURT OF APPEALS

Kerns and the various corporations and partnerships found liable by the district court appealed to the Court of Appeals, and FAL cross-appealed. We separately address each assignment of error considered by the Court of Appeals and its disposition by that court.

## (a) Issues Raised by Kerns et al.

In their initial assignments of error, Kerns and the ownership entities contended that the district court erred in overruling the special appearances of the defendants named for the first time in the consolidated petition. The Court of Appeals found that no service was obtained on these parties and therefore held that the district court erred in overruling the special appearances of Burwick Apartments, Inc.; Thornberry Apartments, Ltd.; Sussex Place Apartments, Ltd.; Ashberry Apartments, Ltd; and Walton Heath Apartments, Ltd. The judgments against these parties were vacated.

Next, Kerns and the ownership entities assigned that FAL's claims based upon breach of written contracts on the Burwick and Walton Heath projects were barred by an anti-assignment provision in those contracts. After reviewing case law from other jurisdictions, the Court of Appeals held, as a matter of first impression in Nebraska, that a contractual provision prohibiting an assignment of rights under a contract, unless a different intention is manifested, does not forbid the assignment of a right to collect money damages for breach of the contract. Finding that the general rule applied to the facts of this case, the Court of Appeals held that the assignment to FAL was not prohibited by the terms of the written contracts.

Kerns and the ownership entities next assigned that the district court erred in permitting recovery on the written contracts for the Burwick and Walton Heath projects because neither project had obtained final approval from Housing and Urban Development. The Court of Appeals, relying on a contractual termination provision in the written contracts, held that the district court did not err in permitting recovery of the fees due on these projects.

Kerns also assigned that the district court erred in finding him personally liable on the written contracts for the Burwick and Walton Heath projects. The Court of Appeals held that Kerns signed the written contracts in his official capacity only and did not bind himself personally when doing so. The Court of Appeals thus reversed the finding that Kerns was personally liable on the written contracts.

Kerns and the ownership entities assigned that the trial court erred in finding that there were oral contracts for the Thornberry, Ashberry, Sussex Place, Kennamare, Devonshire, Wingpoint, and Greely projects. The Court of Appeals held that the district court was not clearly wrong in finding that the parties had entered into oral contracts for the payment of architectural services but that no payment had been made under those contracts and thus affirmed the judgment of the district court.

Kerns and the ownership entities also assigned that the district court erred in finding that FAL was entitled to recover on the basis of promissory estoppel. The Court of Appeals held there was no error in finding that FAL was entitled to recover on the basis of promissory estoppel on all projects.

Kerns and the ownership entities assigned that the district court erred in allowing FAL to recover on the theory of quantum meruit. The Court of Appeals held that because express written and/or oral agreements existed, recovery on the basis of quantum meruit was not permissible.

Finally, Kerns and the ownership entities assigned that the district court erred in awarding prejudgment interest. The Court of Appeals held that the district court's award of prejudgment interest was improper because FAL failed to comply with the statutory requirements of Neb. Rev. Stat. § 45-103 (Reissue 1998).

### (b) Issues Raised by FAL's Cross-Appeal

FAL raised three issues on cross-appeal to the Court of Appeals. First, FAL asserted that the district court erred in failing to find Kerns personally liable on the Thornberry, Ashberry, Sussex Place, Greely, Wingpoint, and Kennamare projects. The Court of Appeals found that the district court did in fact find Kerns personally liable on these projects and affirmed such finding.

Second, FAL assigned that the district court erred in not awarding prejudgment interest at the rate of 18 percent on the Thornberry, Ashberry, Sussex Place, Greely, Wingpoint, and Kennamare projects, when it did so on the judgments relating to the written contracts for Burwick and Walton Heath. The Court of Appeals held that FAL was not entitled to prejudgment interest on any project because FAL failed to comply with the statutory requirements of Neb. Rev. Stat. § 45-103.02 (Reissue 1998).

Third, FAL assigned that the district court erred in failing to award postjudgment interest at the contract rate of 18 percent on projects other than Burwick and Walton Heath. The Court of Appeals found no agreement to pay a rate of interest other than that specified in § 45-103 and awarded by the district court and thus affirmed the judgment of the district court.

## II. ASSIGNMENTS OF ERROR

In their petition for further review, Kerns and the ownership entities allege that the Court of Appeals erred in (1) finding that the trial court did find Kerns individually liable for the judgments awarded on the Thornberry, Ashberry, and Sussex Place projects; (2) affirming the judgments on the promissory estoppel theory; (3) affirming the judgment as to Walton Heath Apartments, Inc.; (4) failing to enforce the anti-assignment clause in the written contracts; (5) applying an incorrect standard of review to the quantum meruit and promissory estoppel causes of action; and (6) improperly summarizing the trial testimony of Anderzhon.

In its petition for further review, FAL asserts that the Court of Appeals erred in (1) applying an incorrect standard of review in evaluating the trial court's award of prejudgment interest; (2) overruling the award of contractual prejudgment interest on the Burwick and Walton Heath projects; and (3) reversing the award of statutory prejudgment interest on the Thornberry, Ashberry, Sussex Place, Greely, Wingpoint, and Kennamare projects.

## III. STANDARD OF REVIEW

In a bench trial of a law action, a trial court's factual findings have the effect of a jury verdict and will not be set aside on appeal unless clearly erroneous. The appellate court does not reweigh the evidence but considers the judgment in a light most favorable to the successful party and resolves evidentiary conflicts in favor of the successful party, who is entitled to every reasonable inference deducible from the evidence. *Phipps v. Skyview Farms*, 259 Neb. 492, 610 N.W.2d 723 (2000).

## IV. ANALYSIS

In its order of judgment, the district court referred to the various apartment projects in related groups and made findings with

respect to each group. We utilize this same format in analyzing the issues which have been presented to us for further review.

### 1. BURWICK AND WALTON HEATH PROJECTS

With respect to the Burwick and Walton Heath projects, ownership entities were formed and B181 contracts were executed. In its petition for further review, FAL did not contest the Court of Appeals' determination that Kerns was not personally liable on the written contracts or under a quantum meruit theory of recovery. The issues related to these projects are therefore limited to whether the Court of Appeals erred in (1) finding Kerns personally liable for all of the fees incurred on a promissory estoppel theory; (2) affirming the judgment against Walton Heath Apartments, Inc.; (3) reversing the award of prejudgment interest; and (4) failing to find that the anti-assignment provision in the written contracts barred the assignment from FAFD to FAL.

### (a) Promissory Estoppel

■ Kerns argues that the Court of Appeals erred in affirming the judgment of the district court holding him liable on the theory of promissory estoppel. The Court of Appeals found that Kerns did not bind himself personally on the contracts when he signed in his official capacity. Anderzhon testified that Kerns did not sign any guarantee to bind himself personally and that Kerns never said he would be personally responsible for the corporations' obligations. Moreover, the written contracts entered into between the architect; Burwick Apartments, Inc.; and Burwick Apartments, Ltd., and between the architect and Walton Heath, Ltd., provide FAL a remedy for the damages it suffered and thus there is no unjust enrichment. When an unambiguous contract exists that covers the issue for which damages are sought, promissory estoppel is not a viable theory of recovery. See, *Ruiz v. A.B. Chance Co.*, 234 F.3d 654 (Fed. Cir. 2000); *Borowski v. State Chemical Mfg. Co.*, 97 Ohio App. 3d 635, 647 N.E.2d 230 (1994); 28 Am. Jur. 2d *Estoppel and Waiver* § 57 (2000). Recovery on a theory of promissory estoppel is based upon the principle that injustice can be avoided only by enforcement of a promise. See, *Merrick v. Thomas*, 246 Neb. 658, 522 N.W.2d 402 (1994); *Hawkins Constr. Co. v. Reiman Corp.*, 245

Neb. 131, 511 N.W.2d 113 (1994). Where, as here, a contract is formed subsequent to the promise upon which estoppel is asserted, there is no injustice in requiring the parties to abide by their contract. We hold that the Court of Appeals erred in determining that Kerns was individually liable on the theory of promissory estoppel.

### (b) Walton Heath Apartments, Inc.

Walton Heath Apartments, Inc., argues that the Court of Appeals erred in affirming the district court's finding that it was liable on the written contract. Walton Heath Apartments, Inc., argues that the written contract was entered into by the architect and Walton Heath, Ltd., and thus it is not liable on the contract.

■ We note that this assignment of error was not raised before the Court of Appeals. However, an appellate court may, at its option, notice plain error. *Krumwiede v. Krumwiede*, 258 Neb. 785, 606 N.W.2d 778 (2000). The record clearly reveals that it was the limited partnership Walton Heath Apartments, Ltd., and not the corporate entity Walton Heath Apartments, Inc., that executed the written contract. Accordingly, the judgment against Walton Heath Apartments, Inc., is vacated. Moreover, because there is no evidence of a promise between Walton Heath Apartments, Inc., and the architect that could support a finding on the basis of promissory estoppel, the judgment against Walton Heath Apartments, Inc., on that basis is also vacated. As a result of our opinion, FAL has no judgment against Walton Heath Apartments, Inc.

### (c) Prejudgment Interest

FAL argues that the Court of Appeals erred in reversing the district court's award of prejudgment interest on the Burwick and Walton Heath projects. The Court of Appeals held that the amounts due were unliquidated and that FAL failed to comply with the statutory requirements of § 45-103.02. On petition for further review, FAL contends that the statutory requirements do not apply when a contract between the parties addresses prejudgment interest.

Article 9.4 of the written contracts relating to the Burwick and Walton Heath projects provides: "Payments due the

Architect and unpaid under this Agreement shall bear interest from the date payment is due at the rate entered below, or in the absence thereof, at the legal rate prevailing at the principal place of business of the Architect." Although no interest rate was stated in the contract, the testimony of Anderzhon established that the prevailing rate was 18 percent per annum. FAL argues that because the parties' contract established a rate of interest and did not require that the claim be liquidated as a condition for recovery of prejudgment interest, the Court of Appeals erred in analyzing the claim under § 45-103.02. In essence, FAL contends that the parties may contract out of § 45-103.02.

Section 45-103.02 provides in relevant part: "(1) . . . interest as provided in section 45-103 shall accrue on the unpaid balance of unliquidated claims from the date of the plaintiff's first offer of settlement" if certain conditions (a) through (d) are met. It also provides: "(2) . . . interest as provided in section 45-104 shall accrue on the unpaid balance of liquidated claims from the date the cause of action arose until the rendition of judgment." Therefore, the plain language of § 45-103.02 encompasses unliquidated claims under subsection (1) and liquidated claims under subsection (2).

The Court of Appeals determined that the claim was unliquidated and that the statutory conditions of subsection (1) were not met. The court therefore reversed the award of prejudgment interest. With respect to these two projects, FAL does not dispute the finding that the claims were unliquidated, but, rather, contends that such a finding is irrelevant because "[w]hen the parties have agreed to a contract rate, the contract governs when, how and at what rate the interest will accrue, not NEB. REV. STAT. § 45-103.02." Memorandum brief for appellee in support of petition for further review at 4. Stated more simply, FAL argues "[o]nly if there is no contract interest provision would the issue of prejudgment interest be analyzed under NEB. REV. STAT. § 45-103.02." Memorandum brief for appellee in support of petition for further review at 4.

Thus, FAL contends that § 45-103.02 does not apply where the parties agree, by their contract, to a prejudgment interest rate and to the circumstances in which prejudgment interest may be recovered. The first part of this contention is correct. Specifically, the

parties' ability to contract regarding the rate of interest is expressly addressed in the statutory language. Section 45-103, which is referenced in § 45-103.02(1) with respect to unliquidated claims, specifies the general rate of interest on decrees and judgments for the payment of money. Section 45-103(2) expressly provides that the general statutory rate does not apply to a "written contract in which the parties have agreed to a rate of interest other than that specified in this section." Therefore, the statutory language allows the parties to contract for the rate of interest that will be applied to an unliquidated claim. Similarly, Neb. Rev. Stat. § 45-104 (Reissue 1998), expressly referenced in § 45-103.02(2) with respect to liquidated claims, provides that "[u]nless otherwise agreed," interest shall be allowed at 12 percent per annum. Thus, the statutory language also allows the parties to contract as to the rate of interest on a liquidated claim. FAL's contention that the Court of Appeals' interpretation effectively prevents a litigant from recovering prejudgment interest at a rate agreed to in the contract is thus without merit.

FAL cites two prior Nebraska cases in support of its assertion that a contractual provision authorizing the payment of prejudgment interest trumps § 45-103.02(1). The first, *Getzschman v. Miller Chemical Co.*, 232 Neb. 885, 443 N.W.2d 260 (1989), involved a 1985 contract dispute over an AIA standard form contract similar if not identical to the contract at issue in the instant case. Paragraph 9.4 of the contract provided, as does the contract in the instant case, that " 'Payments due the Architect and unpaid under this Agreement shall bear interest from the date payment is due at the rate entered below, or in the absence thereof, at the legal rate prevailing at the principal place of business of the Architect.' " *Id.* at 907, 443 N.W.2d at 274. The contract then provided that the legal rate of interest in the State of Nebraska was to be applied. *Id.* Holding that the trial court's award of interest was correct, we reasoned that "[u]nder the contract, interest on the amount due the architect is an explicit item of recovery for the architect." *Id.*

Relying on *Getzschman*, FAL argues that we have addressed the issue presented in the instant case and held that if the parties contract for prejudgment interest, § 45-103.02(1) does not apply. The cause of action in *Getzschman* arose, however, in 1985, prior

to the 1986 enactment of § 45-103.02. At the time that *Getzschman* was decided, there was no statute governing unliquidated prejudgment interest claims. Rather, the law at the time authorized prejudgment interest on certain liquidated claims unless otherwise agreed. See, § 45-104; *First Nat. Bank v. Bolzer*, 221 Neb. 415, 377 N.W.2d 533 (1985); *Frank McGill, Inc. v. Nucor Corp.*, 195 Neb. 448, 238 N.W.2d 894 (1976). Thus *Getzschman* recognized merely that the parties had otherwise agreed to allow prejudgment interest to accrue on the unliquidated claim.

■ Since *Getzschman* was decided and § 45-103.02 was enacted, we have repeatedly held that § 45-103.02 prescribes the conditions for allowance of prejudgment interest on all causes of action accruing on or after January 1, 1987. See, *Blue Valley Coop. v. National Farmers Org.*, 257 Neb. 751, 600 N.W.2d 786 (1999); *Cheloha v. Cheloha*, 255 Neb. 32, 582 N.W.2d 291 (1998); *Daubman v. CBS Real Estate Co.*, 254 Neb. 904, 580 N.W.2d 552 (1998); *Pantano v. McGowan*, 247 Neb. 894, 530 N.W.2d 912 (1995); *Label Concepts v. Westendorf Plastics*, 247 Neb. 560, 528 N.W.2d 335 (1995); *Peterson v. Kellner*, 245 Neb. 515, 513 N.W.2d 517 (1994); *Sayer v. Bowley*, 243 Neb. 801, 503 N.W.2d 166 (1993); *Elson v. Pool*, 235 Neb. 469, 455 N.W.2d 783 (1990); *Knox v. Cook*, 233 Neb. 387, 446 N.W.2d 1 (1989). To the extent that FAL argues that the contract between the parties is an agreement allowing prejudgment interest under the "[u]nless otherwise agreed" language in § 45-104, we have also rejected that argument. See *Records v. Christensen*, 246 Neb. 912, 524 N.W.2d 757 (1994).

FAL also cites this court to *Mandolfo v. Chudy*, 5 Neb. App. 792, 564 N.W.2d 266 (1997), *affirmed* 253 Neb. 927, 573 N.W.2d 135 (1998). In *Mandolfo*, the Court of Appeals addressed whether coguarantors of a promissory note could recover the entire principal sum and interest from another coguarantor, or merely a pro rata share. After allowing recovery of the entire principal balance, the district court also awarded interest calculated at 11 percent as shown on the face of the note. In *Mandolfo*, the Court of Appeals addressed the award of prejudgment interest as follows:

> The [plaintiffs] seek to recover "repayment of interest in accordance with the specific terms and conditions of the

Note." . . . They argue that because the parties contracted for payment of interest, the contract controls, and that the agreed upon interest rate should be enforced. . . . Both parties argue that the other is not entitled to interest under the prejudgment interest statute, Neb. Rev. Stat. § 45-103.02 (Reissue 1993), because of failure to comply with the statute. We affirm the district court's decision to calculate interest on the terms of each promissory note rather than under the prejudgment statute, § 45-103.02. In *Sayer v. Bowley*, 243 Neb. 801, 503 N.W.2d 166 (1993), the Supreme Court held that in order to receive prejudgment interest, a litigant must strictly comply with § 45-103.02, which allows prejudgment interest to accrue from the date of the plaintiff's first offer of settlement which is exceeded by the judgment when all express statutory conditions for such offer are met. Here, interest is properly calculated on the basis of the terms of the promissory note.

5 Neb. App. at 801-02, 564 N.W.2d at 273.

Contrary to FAL's assertions, however, *Mandolfo* does not hold that if the parties contract for the payment of interest, then the contract, and not § 45-103.02, governs the award of prejudgment interest. Unlike the present case, *Mandolfo* involved a suit on an interest-bearing instrument. In such a suit, the plaintiff is merely seeking damages for breach of contract, and one of the elements of such damages is the amount of interest the plaintiff would have obtained had the breach not occurred. See *Stansbery v. Schroeder*, 226 Neb. 492, 412 N.W.2d 447 (1987). Such interest is not "prejudgment" interest subject to the statutory requirements of § 45-103.02. See *First Nat. Bank v. Bolzer*, 221 Neb. 415, 377 N.W.2d 533 (1985). FAL's contention that the Court of Appeals erred in disregarding the contractual prejudgment interest provision is without merit.

FAL also argues that the Court of Appeals allowed postjudgment interest at the contract rates and asserts that such an allowance is "wholly inconsistent" with its refusal to allow prejudgment interest at the contract rates. Memorandum brief for appellee in support of petition for further review at 6. Postjudgment interest is awarded pursuant to Neb. Rev. Stat. § 45-103.01 (Reissue 1998), which simply provides: "Interest as

provided in section 45-103 shall accrue on decrees and judgments for the payment of money from the date of rendition of judgment until satisfaction of judgment." The reference in this statute to § 45-103 allows the provision in the written contract as to rate of interest to apply, just as in § 45-103.02. The difference, however, is that § 45-103.01 contains no further conditions on the award of postjudgment interest, in contrast to § 45-103.02 regarding prejudgment interest. Consequently, there is no inconsistency in the application of the contract rate for postjudgment interest. The Court of Appeals did not err either in refusing to apply article 9.4 of the B181 contracts or in reversing the award of prejudgment interest because there was no showing of compliance with the conditions set forth in § 45-103.02(1).

### (d) Anti-Assignment Provision

The B181 contracts entered into on the Burwick and Walton Heath projects provide in part in article 8.3: "Neither the Owner nor the Architect shall assign, sublet or transfer any interest in this Agreement without the written consent of the other." It is undisputed that there was no written consent given prior to the assignment to FAL. Kerns and the ownership entities argue that the contractual prohibition against an assignment of "any interest" without prior written consent bars FAL, as an assignee, from recovering damages for any breach of the contracts.

The parties have not cited a Nebraska case addressing this issue, and our independent research has revealed no such case. As noted by the Court of Appeals, however, there are cases from other jurisdictions which specifically address the issue presented.

The Washington Supreme Court addressed whether the identical language present in the instant case barred an assignment for breach of contract damages in *Berschauer/Phillips v. Seattle Sch. Dist.*, 124 Wash. 2d 816, 881 P.2d 986 (1994). In that case, a school district (District) contracted with an architect to design a new elementary school. The contract between the District and the architect provided: " 'Neither the Owner [District] nor the Architect shall assign, sublet or transfer any interest in this Agreement without the written consent of the other.' " *Berschauer/Phillips*, 124 Wash. 2d at 829, 881 P.2d at 993-94. A construction company, relying upon the plans created by the

architect, subsequently submitted a bid to construct the new school and was awarded the project by the District. When construction costs exceeded estimates by approximately $3.8 million, the construction company sued the District for breach of contract, alleging its loss was in part caused by the defective plans. The District settled with the construction company, and in doing so, the District assigned " 'any and all such claims relating to this project' " that it had against the architect to the construction company. *Id.* at 820, 881 P.2d at 989. When the construction company sought recovery from the architect based upon this assignment, the architect claimed the anti-assignment provision in its contract with the District prohibited the District from assigning its claim to the construction company.

On appeal, the construction company argued the language at issue was merely a general anti-assignment clause and thus did not prohibit the assignment of a breach of contract action. The architect, in contrast, argued that the contract prohibited the assignment of "*any interest*," which necessarily included a cause of action for breach of contract. *Id.* at 829, 881 P.2d at 994. Reasoning that the contractual language at issue was "a boilerplate provision intended to prohibit the exchange of contractual performances" and that the architect had completed the terms of the contract prior to the assignment, the court held that the clause did not prohibit the assignment of a cause of action for breach of contract. *Id.* at 830, 881 P.2d at 994.

The contractual language at issue in this case was also reviewed in *Ford v. Robertson*, 739 S.W.2d 3 (Tenn. App. 1987), a case relied upon by the Court of Appeals. In *Ford*, an owner and an architectural firm entered into an AIA standard form contract containing the following provision: " 'Neither the Owner nor the Architect shall assign, sublet or transfer any interest in this Agreement without the written consent of the other.' " *Id.* at 4. After completing design services on numerous apartment complexes and executing a certificate of substantial completion, the architects were paid in full. Thereafter, the owner sold the apartments to the plaintiffs in an instrument also assigning " 'Grantor's right, title and interest in and to all leases and other contracts (including, without limitation, all warranties, guaranties and bonds,) affecting the property . . . .' " *Id.* at 4.

Plaintiffs thereafter attempted to sue the architects for breach of contract. Interpreting the owner's assignment as a conveyance of every interest he had in the property, the Tennessee Court of Appeals held that the owner could assign his right to recover damages from the architects for breach of contract. The court reasoned:

> The law draws a distinction between the right to assign performance under a contract and the right to receive damages for its breach. The nonassignability clause prohibits the assignment or transfer of any "interest in this agreement." This "any interest" language must be construed to mean any interest in the performance of the *executory* contract.
>
> Plaintiffs contend, and we agree, that this is a suit for damages for breach of a fully *executed* contract and is not a suit for performance by the Architects of an executory contract. What the plaintiffs acquired by the assignment was any claim that [the owner] had against the Architects for money damages for nonperformance and such a claim is not within the scope of the clause prohibiting assignment of "any interest in this agreement."

(Emphasis in original.) *Id.* at 5. See, also, *Cordis Corp. v. Sonics Intern., Inc.*, 427 So. 2d 782 (Fla. App. 1983) (holding provision forbidding assignment of rights under contract does not preclude assignment of accrued claims for damages arising from breach of contract); *Fuller v. Favorite Theaters Co. of Salt Lake*, 119 Utah 570, 230 P.2d 335 (1951) (holding provision prohibiting assignment of contract does not affect assignability of cause of action for breach of contract). We find the reasoning of these cases to be persuasive.

Kerns' argument to the contrary is premised upon *American Community Stores Corp. v. Newman*, 232 Neb. 434, 441 N.W.2d 154 (1989). In that case, we held that in Nebraska, an assignment by a lessee of an interest in a lease which prohibits such assignment without the lessor's consent generally is ineffective without such consent. *American Community Stores Corp.* is distinguishable from the instant case. Assigning an interest in a lease directly affects the parties' actual performance of the contract, whereas the assignment of a right to collect damages for a breach of contract, as in the instant case, does not. Therefore,

the intent of the provision against assignment of rights under a contract, which generally is to allow the parties to choose with whom they contract, is not affected by allowing an assignment of a right to collect damages for breach of contract. 6 Am. Jur. 2d *Assignments* § 33 (1999). See, also, *Panwitz v. Miller Farm-Home Oil Service*, 228 Neb. 220, 224, 422 N.W.2d 63, 66 (1988) (holding contractual provision prohibiting assignment without vendor's consent "does not preclude such assignment or sale if the contract has been fully performed or if assignee offers and is able to complete performance" (emphasis omitted)). It is undisputed that the assignment at issue occurred after the contracts were breached. The anti-assignment clause therefore did not bar the assignment of the claims at issue.

## 2. THORNBERRY, ASHBERRY, AND SUSSEX PLACE PROJECTS

On the Thornberry, Ashberry, and Sussex Place projects, ownership entities were formed but no written contracts were executed. With respect to these projects, the issues presented to us for further review are whether the Court of Appeals erred in (1) determining that the district court found Kerns personally liable under a theory of breach of oral contract and (2) reversing the award of statutory prejudgment interest. Because of our disposition of these assignments of error, it is also necessary for us to address whether the Court of Appeals erred in failing to find Kerns liable on the theories of promissory estoppel or quantum meruit.

### (a) Individual Liability of Kerns and Promissory Estoppel

With respect to these three projects, the applicable portion of the district court's order provides:

> As for the Thornberry, Ashberry and Sussex projects, [FAL] satisfied its burden of proving (1) enforceable verbal contracts between the architect and Thornberry Apartments, Inc. and Thornberry Apartments, Ltd; Ashberry Apartments, Inc. and Ashberry Place Apartments, Ltd; and Sussex Place Apartments, Inc. and Sussex Place Apartments, Ltd., (b) the architect render[ed] services as called for in said contracts (c) and which were terminated through no fault of the architect but through fault of said Defendants, and (d) said Defendants owe

[FAL] for professional fees, reimbursable expenses and termination expenses. Notwithstanding, the evidence is also more than sufficient to satisfy [FAL]'s burden on its promissory estoppel and quantum meruit causes of action against said Defendants.

The district court thereafter entered judgment on these projects against the above entities. As noted above, the Court of Appeals vacated the judgment against Thornberry Apartments, Ltd.; Ashberry Apartments, Ltd.; and Sussex Place Apartments, Ltd., based upon its finding that their special appearance should have been sustained.

The Court of Appeals interpreted the order as finding Kerns personally liable on these projects. The order, however, makes no mention of Kerns individually, and judgment was entered solely against the ownership entities. We therefore construe the holding of the district court as finding that Kerns was not personally liable on these projects.

■ In its cross-appeal to the Court of Appeals, FAL argued that the district court erred in not finding Kerns personally liable on these projects on the theories of oral contract, promissory estoppel, or quantum meruit. Because of its erroneous interpretation of the district court's order, the Court of Appeals did not reach this assignment. Upon granting further review which results in the reversal of a decision of the Nebraska Court of Appeals, this court may consider, as it deems appropriate, some or all of the assignments of error the Court of Appeals did not reach. *Lange v. Crouse Cartage Co.*, 253 Neb. 718, 572 N.W.2d 351 (1998). We now address the merits of the assignment.

The district court found that Kerns was liable on the theory of oral contract to pay a $5,000 retainer on the Greely, Wingpoint, and Kennamare projects. The finding that the evidence establishes an oral contract is supported by the record. Kerns does not take issue with the existence of this contractual liability, and FAL does not contest its scope on further review. The record reflects that during their breakfast meetings, Anderzhon and Kerns discussed all of the projects, including the Greely, Wingpoint, and Kennamare projects, as well as the Thornberry, Ashberry, and Sussex Place projects, as a single undertaking. The record thus establishes that Kerns entered into an oral contract to pay the first

$5,000 in fees on each project, payable before any ownership entities were formed or written contracts were signed, but that the parties agreed that other fees would be the responsibility of the ownership entities only. Because the evidence reveals that Kerns promised to pay the initial $5,000 on all of the projects, it was clearly erroneous for the district court not to find Kerns obligated by oral contract for the $5,000 initial payment on the Thornberry, Ashberry, and Sussex Place projects, just as the court found him liable for that amount on the Greely, Wingpoint, and Kennamare projects.

We note, however, that the record reflects that $11,600 was paid on the Thornberry project, an amount in excess of Kerns' $5,000 contractual liability. We therefore hold that the district court clearly erred in not finding Kerns to be personally liable for breach of oral contract for the $5,000 initial retainer on the Ashberry and Sussex Place projects.

To the extent that FAL argues that Kerns is liable for all of the damages on the Thornberry, Ashberry, and Sussex Place projects on the theory of promissory estoppel or quantum meruit, such argument is without merit. Neither promissory estoppel nor quantum meruit is a viable theory when an enforceable contract exists between the parties and the contract governs the damages at issue. See *Ruiz v. A.B. Chance Co.*, 234 F.3d 654 (Fed. Cir. 2000). Moreover, because the architect and Kerns agreed that Kerns' liability was to be $5,000 on each project, there is no evidence to support any reasonable reliance on the part of the architect which would support recovery in excess of that amount. Kerns' individual liability to FAL on these projects was limited to the $5,000 initial retainer.

### (b) Prejudgment Interest

FAL argues that the Court of Appeals erred in reversing the district court's award of prejudgment interest. Initially, FAL contends that the Court of Appeals applied the wrong standard of review in that it failed to apply a clearly erroneous standard of review. We stated in *Blue Valley Co-op. v. National Farmers Org.*, 257 Neb. 751, 757, 600 N.W.2d 786, 792 (1999), "[r]egarding the prejudgment interest awarded . . . and whether . . . damages were liquidated, our scope of review is de novo." The Court of Appeals therefore did not err in examining the record de novo.

Based upon our de novo review of the record, we agree with the Court of Appeals that there was a reasonable controversy as to the amounts due, and therefore the claims were unliquidated. Because FAL failed to comply with the statutory requirements of § 45-103.02(1), the Court of Appeals correctly reversed the award of prejudgment interest.

### 3. Pending Motions Filed During Appeal

During the pendency of this appeal, both parties filed motions relating to the supersedeas deposits made by Kerns. The total of the supersedeas deposits as it currently exists is sufficient to satisfy the judgment as modified by the Court of Appeals and as further modified by this court, and all pending motions are therefore denied as moot.

## V. CONCLUSION

As a result of our opinion, FAL has a judgment on the Burwick project against Burwick Apartments, Ltd., in the principal amount of $98,433.46 plus costs. No prejudgment interest applies to this amount. FAL has no judgment against Burwick Apartments, Inc.

FAL has no judgment with respect to the Walton Heath project. The judgment against Walton Heath Apartments, Ltd., was correctly vacated by the Court of Appeals, and we hold that Walton Heath Apartments, Inc., cannot be liable because it was not a party to the written contract and there is no evidence of a promise made by Walton Heath Apartments, Inc. Moreover, Kerns is not personally liable on this project.

FAL has a judgment in the principal amount of $116,668.48 against Thornberry Apartments, Inc.; a judgment in the principal amount of $72,470.36 against Sussex Place Apartments, Inc.; and a judgment in the principal amount of $37,218.32 against Ashberry Apartments, Inc. No prejudgment interest is awarded on these amounts.

FAL has a judgment against Kerns individually in the amount of $15,000 on the Greely, Wingpoint, and Kennamare projects, collectively. No prejudgment interest is awarded on this amount.

FAL has a judgment against Kerns individually in the amount of $10,000 on the Ashberry and Sussex Place projects, collectively. No prejudgment interest is awarded on this amount.

The judgment of the Court of Appeals is affirmed in part, reversed in part, and modified in part. The Court of Appeals is directed to remand the cause to the district court with directions to enter judgment in accordance with this opinion.

AFFIRMED IN PART, REVERSED IN PART AND MODIFIED IN PART, AND REMANDED WITH DIRECTIONS.