Brent GILMORE, Gary Livingston, William J. Otts, and Richard Peschau, Plaintiffs,

v.

WOODMEN ACCIDENT & LIFE COMPANY a Nebraska Insurance Corporation, Thomas D. Potter, John Haessler, Mark H. Bale, Margin P. Ehly, Krista Frank, Susie Keisler–Munro, Keith Prettyman, and Frederick R. Rickers, Defendants.

No. 8:03 CV 305.

United States District Court, D. Nebraska.

Feb. 14, 2005.

David A. Domina, Nora M. Kane, Domina Law Firm, Richard F. Hitz, Omaha, NE, for Plaintiffs.

Gary J. Nedved, Keating, O'Gara Law Firm, Lincoln, NE, for Defendants.

## MEMORANDUM AND ORDER

BATAILLON, District Judge.

Before the court is the defendants' Motion for Partial Summary Judgment (Filing No. 41). The court, having considered the motion, the plaintiffs' response, the defendants' reply,[1] and the relevant materials and law, now determines that the defendants' Motion for Partial Summary Judgment should be granted.

### Undisputed Facts

On July 1, 1998, each plaintiff, Brent Gilmore, Gary Livingston, William J. Otts and Richard Peschau, entered into an employment contract with Woodmen Accident and Life Company (Woodmen), a Nebraska corporation.[2] Under their contracts, plaintiffs were to serve Woodmen as Mentoring General Agents (MGAs). As MGAs, plaintiffs were responsible for recruiting sales persons and general agents (GAs) to serve as representatives of Woodmen. The plaintiffs were to develop sales structures, organizations, and operations within their territories. In addition, plaintiffs were responsible for providing administrative, educational, and motivational support and assistance to the sales forces they developed. In August of 2002, however, Woodmen terminated the employment contracts.

Plaintiffs have brought this action claiming that termination of their employment

---

1. Subsequent to these filings, plaintiffs filed a Motion for Leave to Supplement Evidence Offered in Opposition to defendants' Motion for Summary Judgment (Filing No. 115), to which defendants objected (Filing No. 117). Because it is necessary that the court review a complete and accurate record in order to determine whether there is a genuine issue of material fact, the plaintiffs' Motion for Leave to Supplement Evidence Offered in Opposi-tion to defendants' Motion for Summary Judgment (Filing No. 115) is granted and defendants' objection (Filing No. 117) is over-ruled.

2. This court has jurisdiction pursuant to 28 U.S.C. § 1332. There is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.

contracts constitutes a breach of contract and that they are entitled to damages. Specifically, the plaintiffs contend that their employment contracts with Woodmen could only be terminable for cause. Plaintiffs seek compensation under several different theories: misrepresentation/concealment, breach of contract, promissory estoppel, the Nebraska Wage Payment and Collection Act, and tortious interference with business relationship. Defendants have responded, arguing that termination of the employment contracts was proper; that the plaintiffs were employees at-will; and that the plaintiffs were paid for all their services under the contracts. The defendants have filed a motion for partial summary judgment concerning the plaintiffs' claims based on: (1) breach of contract; (2) promissory estoppel; (3) tortious interference of a business relationship; and (4) compensation under the Nebraska Wage Payment and Collection Act. Defendants assert that there are no genuine issues of material fact with respect to the issue of breach of contract, thus, their motion should be granted. Naturally, the plaintiffs oppose the defendants' motion contending that their employment contracts were terminable only for cause, not at-will. Plaintiffs contend that defendants' motion should be denied because there are genuine issues of material fact with respect to every issue on which the defendants seek summary judgment. For the reasons stated below, the court determines that defendants' motion for partial summary judgment should be granted.

### Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See* Fed. R.Civ.P. 56(c). A genuine issue of material fact exists for trial when, in viewing the record and all reasonable inferences drawn from it in a light most favorable to the non-movant, a reasonable jury could return a verdict for the non-movant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The movant bears the burden of establishing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the movant meets this burden, the non-movant must set forth specific facts that demonstrate the existence of a genuine issue for trial. *Id.* Because the purpose of summary judgment is to isolate and dispose of factually unsupported claims, the non-movant must respond to the motion with evidence setting forth specific facts showing that there is a genuine issue for trial. *Id.* To successfully oppose the motion for summary judgment, the non-movant cannot rest on the pleadings alone, but must designate specific facts in affidavits, depositions, answers to interrogatories or admissions that establish that there is a genuine triable issue. *Id.*

### Discussion

As indicated above, the defendants seek summary judgment on the plaintiffs' claims of: (1) breach of contract; (2) promissory estoppel; (3) tortious interference with a business relationship; and (4) compensation under the Nebraska Wage Payment and Collection Act.[3] Specifically, defendants contend that they are entitled to summary judgment because the plaintiffs' employment contracts were termina-

---

**3.** Nebraska law applies in this diversity case. *See Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

ble at-will and because plaintiffs had been paid for all their services under the contract. The defendants contend that there are no genuine issues of material fact with respect to these issues, therefore, their motion should be granted. The court agrees.

### Breach of contract

■ In an action for breach of an employment contract, the burden of proving the existence of a contract and all the facts essential to the cause of action is upon the person who asserts the contract. *Hamersky v. Nicholson Supply Co.*, 246 Neb. 156, 159, 517 N.W.2d 382, 385 (1994) (citations omitted). The language which forms the basis of the employment contract, whether oral or written, must constitute an offer definite in form which is communicated to the employee, and the offer must be accepted and consideration furnished for its enforceability. *Id.* Oral representations may, standing alone, constitute a promise sufficient to create contractual terms which could modify the at-will status of an employee. *Id.* Nebraska courts "have consistently held that when employment is not for a definite term and there are no contractual, statutory, or constitutional restrictions upon the right of discharge, an employer may lawfully discharge an employee whenever and for whatever cause it chooses." *Clark v. Kellogg Company*, 205 F.3d 1079, 1083 (8th Cir.2000) (citing *Goff–Hamel v. Obstetricians & Gynecologists*, 256 Neb. 19, 588 N.W.2d 798, 801 (1999)). An employer does not incur liability for breach of contract by terminating an offer for employment for an indefinite time. *Id.*

■ In this case, the plaintiffs' MGA contract provides:

This agreement may be terminated:

1. *By Notice. You or we can terminate this Agreement by giving the other written notice 30 days in advance of the termination date.*

2. When You Die.

3. For Cause. We may terminate this Agreement immediately and without prior notice if

 a. you exceed the LIMITS ON AUTHORITY § III., for a second or subsequent time after receiving a second warning concerning your exceeding such limits;

 b. you appropriate for your own use any money or other property which belongs to us or which is for our benefit;

 c. you submit any document to us on which the signature is not genuine or duly authorized;

 d. your license to sell insurance is revoked, suspended or taken away due to your violation of law or regulation; or

 e. you commit any dishonest, fraudulent or illegal act in connection with your service on our behalf.

*This Agreement supersedes all previous Agreements between you and us and is the entire Agreement between you and us.*[4]

*See* Filing No. 76 (Index) at 12. Clearly this language provides that plaintiffs' employment with Woodmen was at-will.[5]

---

4. The MGA contract was amended on April of 1999, however, the amendment did not modify the termination clause of the contract in any respect. *See* Filing No. 76 (Index) at 13.

5. In 1998, Otts entered into an MGA contract with Woodmen to replace an Agency Manager contract which he previously had with Wood-

men. *See* Otts' deposition at 66 and 68. However, on July 1, 2000, Otts' MGA contract was replaced with a representative's contract, which in turn was replaced with a General Agent contract ("GA contract") on July 16, 2000. *See* Otts' Deposition at 72,75,78–79. At the time the MGA contracts were terminated, Otts was under a GA contract. However,

Plaintiffs, however, assert that defendants made oral representations which modified their at-will status. Based on these alleged oral representations, plaintiffs contend that their employment contracts were terminable only for cause. The court, however, does not agree with the plaintiffs because, in their depositions, they clearly contradict this position and reveal their understanding that their employment was at-will. For example, Mr. Livingston was asked:

Q. You entered into this contract, as I understand it, after having actively participated in the drafting of the contract, knowing the language of the contract, consulting with the LIMRA representative, knowing all of the risks, and, of course, based upon your extensive knowledge of the life insurance industry; is that true?

A. That's true.

Q. When you signed the contract— or prior to signing the contract in 1998, no one from Woodmen gave you any assurances to how long the contract would remain in effect.

A. That's correct, that's correct.

Q. And you knew and understood from your participation in the drafting of the contract and knowing the language of the contract that the contract could be terminated by either party upon giving 30 days' notice, true?

A. True. Standard language, all companies.

Q. And it's my understanding that that termination provision, which provides for 30 days' notice, can be an advantage for both the agent and

the company; is that a fair statement?

A. I think that's fair.

Q. You could terminate with Assurity tomorrow, could you not?

A. Yes.

Q. I want to go back to the MGA contract, Mr. Livingston. To your knowledge, the MGA contract was never modified other than the written modification that we've marked as an exhibit; is that true?

A. That's true.

Q. . . . from and after the time that you signed the MGA contract in 1998, there were no oral modifications to that contract?

A. That's correct.

See Livingston's Deposition at 30, 34–36 and 91–93. Mr. Otts was asked:

Q. Were you ever told by anyone at Woodmen, that your *contracts* could only be terminated, quote, for cause?

A. No.

See Otts' Deposition at 150. Mr. Peschau was asked:

Q. Well, when you say wrongfully terminated, we previously agreed that the MGA contract provides that either party may terminate the contract by giving notice, true?

A. That's true.

Q. And no one ever told you either under AM contract, MGA contract, or the existing brokerage contract that you could only be terminated for cause; is that true?

A. That's true.

this fact does not change Otts' employment at-will with Woodmen. The termination clause of Otts' GA contract is identical to that of the MGA with one exception that, unlike the MGA contract, no 30–day advance notice is required before termination. Termination under the GA contract could take place at any time without any advance notice. See plaintiffs' brief at 9 and Filing No. 76 (Index) at 16–17.

*See* Peschau's Deposition at 18, 24–25, 47–48. Mr. Gilmore was asked:

Q. Did anyone make the statement to you after the contract was signed that the contract could only be terminated for cause?

A. Not that I recall.

Q. So any statements that were made about terminating the contract only for cause were made prior to the date that you signed the MGA contract?

A. Correct.

Q. Okay. At the time you signed it, then, did you understand that you could be terminated by the company giving you 30 days' notice?

A. Yes.

Q. And you understood that to be the contract up until the time that you did get your notice in July of 2002, true?

A. True.

Q. And you understood from and after July 1 of 1998 that you could walk away from the company by giving the company 30 days' notice.

A. Sure.

Q. . . . and you understood that this termination provision from and after you signed it on July 1 of 1998 governed your contract with the company.

A. Sure, yes.

Q. Okay. But you understood that since the contract governed your relationship, the company could contract— could terminate you on 30 days' notice as provided in the MGA contract, true?

A. True. That's what the contract provided.

Q. And other than we've marked as exhibit 4 [the 1999 amendment to MGA contract], there were no modifications to the MGA contract; is that true?

A. That's true.

*See* Gilmore's Deposition at 31, 34–35 and 38. Plaintiffs' deposed testimony clearly indicates that they knew their employment contracts with Woodmen were for an indefinite time and at-will. The plaintiffs have not provided statements, made by defendants, which could be reasonably construed as a promise sufficient to create contractual terms that modified their at-will status. *Hebard v. AT & T*, 228 Neb. 15, 17, 421 N.W.2d 10, 12 (1988). Here, the plaintiffs, at best, have only indicated a subjective understanding of "job security" which is not sufficient to establish an implied contract of employment terminable for cause. *Hamersky*, 246 Neb. at 160, 517 N.W.2d 382. In this case, the plaintiffs' contracts were at-will, and no breach occurred when defendants terminated those contracts.[6] As a result, defendants are entitled to judgment as a matter of law with respect to this issue.

### Promissory Estoppel

 Recovery on a theory of promissory estoppel is based upon the principle that injustice can be avoided by enforcing

---

6. Plaintiffs also claim that defendants failed to comply with the implied covenant of good faith and fair dealing when they terminated the contracts. The court disagrees. The implied covenant of good faith and fair dealing, which exists in every contract, requires that none of the parties to a contract do anything which will injure the right of another party to receive the benefit of the contract. *See Cimino v. FirsTier Bank*, 247 Neb. 797, 811, 530 N.W.2d 606, 616 (1995). Here, the parties got what they bargained for—plaintiffs and defendants received the benefit of their employment at-will contracts. Plaintiffs' claim that defendants failed to comply with the implied covenant of good faith and fair dealing by terminating the contracts is without merit.

a promise. *Folgers Architects Limited v. Kerns*, 262 Neb. 530, 538, 633 N.W.2d 114, 121 (2001) (citations omitted). However, when an unambiguous contract exists that covers the issue on which damages are sought, promissory estoppel is not a viable theory of recovery. *Id.* Here, the plaintiffs' claim of promissory estoppel fails because: (1) the parties entered unambiguous employment at-will contracts; (2) no breach occurred when those contracts were terminated; and (3) plaintiffs have been paid for all their services under the contracts. *See* Livingston's Deposition at 88–89 and 93; Gilmore's Deposition at 14 and 42; Peschau's Deposition at 29; and Otts' Deposition at 67–68 and 84–85. In this case, there are no additional promises that need to be enforced. Therefore, the plaintiffs' claim of promissory estoppel fails as a matter of law.

### The Nebraska Wage Payment and Collection Act

Plaintiffs also claim that, as a result of the termination of their contracts, their wages were interrupted. Plaintiffs contend that they lost earnings and benefits which would have been obtained if their contracts had remained in effect. They contend that defendants' termination of their contracts resulted in losses recoverable under the Nebraska Wage Payment and Collection Act (the "Act"). The court disagrees. The Act, codified at Neb.Rev. Stat. § 48–1231, in relevant part, provides:

An employee having a claim for wages which are not paid within thirty days of the regular payday designated or agreed upon may institute suit for such unpaid Wages in the proper court....

*See* Neb.Rev.Stat. § 48–1231. The Act is remedial in nature and primarily provides procedures to enforce payment to employees for work performed. *See Malone v. American Bus. Info.*, 262 Neb. 733, 634 N.W.2d 788, 792–93 (2001). Here, however, the Act does not apply. The plaintiffs

have acknowledged payment for all the work they performed under their employment at-will contracts and nothing is left to be paid to them. In his deposition, Mr. Livingston was asked:

Q. There is a claim made in the complaint about wages, things being due under the MGA contract. Am I correct that you were paid all commissions that were due and owing to you under the 1998 MGA contract up until the time it was terminated?

A. That's correct.

Q. My question to you now is, though, that you were paid all of the commissions and you were given the benefits that were due to you up until the point that the MGA contract was terminated?

A. That's correct.

Q. And before we get into our damages discussion this afternoon, while the MGA contract was in effect, you were fully paid?

A. Yes.

*See* Livingston deposition at 88–89 and 93. In his deposition, Mr. Gilmore was asked:

Q. Okay. Now, when you say you had guaranteed benefits, those—— you understood when you signed the MGA contract in 1998 that those benefits would only be in force and effect as long as the contract was in force; is that correct?

A. Sure.

Q.... is it true that you were paid everything that the company owed to you under the MGA contract, Exhibit 2, while it was in effect?

A. As it was in effect, yes.

Q. Okay. I mean they paid you all of the commissions that were due and

owing to you up until the termination date.

A. Right.

See Gilmore's Deposition at 14 and 42. In his deposition, Mr. Peschau was asked:

Q. Okay. But for the business that was submitted to the company under the MGA agreement, you were paid under the terms and conditions of the MGA contract?

A. Only that type— business that was written and got placed, yes.

See Peschau Deposition at 29. In his deposition, Mr. Otts was asked:

Q. Up until— with respect to your agency manager contract in both of its forms, the California version and the Kansas version, were you paid all of the commissions and moneys that you were entitled to under those agreements?

A. I would hope so.

Q. ... with respect to the MGA contract you signed which replaced your previous AM contract, up to the time that agent— excuse me, up to the time that your MGA contract was terminated, had you been paid all the appropriate commissions and moneys due to you under that agreement?

A. I do not know.

Q. ... are you aware as you sit here today of any commissions or overwrites that you did not receive that would have come due to you under exhibit 46 [the GA agreement] and the commission schedules which applied to it?

A. On my own personal production, no.

See Otts' Deposition at 67–68 and 84–85. Clearly, plaintiffs have been fully paid under their employment at-will contracts. No additional contractual payments to them exist which must be enforced. Therefore, defendants are entitled to judgment as a matter of law with respect to the plaintiffs' claims based on the Nebraska Wage Payment and Collection Act.

### Tortious Interference with a Business Relationship

Plaintiffs' final claim is for tortious interference with a business relationship. Here, the plaintiffs claim that their relationships with other co-employees, who worked for or with them under separate contracts with Woodmen, were damaged as a result of the termination of their employment contracts. Plaintiffs contend that this amounts to a tortious interference with a business relationship and that defendants are liable. The court does not agree. To maintain a tortious interference with a business relationship, the plaintiffs must prove that the action by the defendants was unjustified. See Macke v. Pierce, 266 Neb. 9, 14, 661 N.W.2d 313, 317 (2003). In this case, employer Woodmen clearly was entitled to terminate the plaintiffs' employment at-will contracts. No unjustified conduct on the part of Woodmen exists. Furthermore, the Nebraska Supreme Court has held that, to constitute actionable interference with an employment relationship, the actions must have been committed in furtherance of some purpose other than the lawful purpose of the employer. See Huff v. Swartz, 258 Neb. 820, 829, 606 N.W.2d 461, 468 (2000). Here, defendants had the right to terminate the MGA and GA employment contracts. Plaintiffs have not shown that termination of those contracts was for some purpose other than the lawful purpose of Woodmen. The plaintiffs' claim for tortious interference with a business relationship fails as a matter of law.

### Conclusion

Viewing the evidence in the light most favorable to the plaintiffs, the court finds that plaintiffs were employees at-will and

that no breach of contract occurred when their employment at-will contracts were terminated. There are no genuine issues of material fact with respect to this issue or with respect to the plaintiffs' claims for recovery under promissory estoppel, the Nebraska Wage Payment and Collection Act and the theory of tortious interference with a business relationship. Consequently, summary judgment is appropriate with respect to all these issues.[7]

IT IS ORDERED:

1. The Plaintiff's Motion for Leave to Supplement Evidence Offered in Opposition to Defendants' Motion for Summary Judgment (Filling No. 115) is granted.

2. The defendants' Motion for Partial Summary Judgment (Filing No. 41) is granted.

---

7. The only remaining issue for determination by the court is the plaintiffs' claim of misrep- resentation/concealment.