GERALD E. PANWITZ ET AL., APPELLEES, V. MILLER FARM-HOME OIL SERVICE, INC., A CORPORATION, APPELLANT.

422 N.W.2d 63

Filed April 15, 1988.   No. 86-212.

Howard P. Olsen, Jr., of Raymond, Olsen, Ediger, Ballew & Olsen, P.C., for appellant.

Thomas A. Danehey of Curtiss, Moravek, Danehey & Curtiss, P.C., for appellees.

BOSLAUGH, CAPORALE, and GRANT, JJ., and RIST and CLARK, D. JJ.

RIST, D.J.

This action arose out of the following facts and circumstances:

In 1978, defendant purchased from Robert E. and Nola Saxton (Saxtons) certain land in Box Butte County, Nebraska, and inventory, fixtures, and equipment for a farm supply business located thereon, for $140,000, defendant giving its note therefor and securing such note by a mortgage on the real estate purchased.

On June 15, 1984, defendant entered into a contract with plaintiffs for the sale to the latter of the same land plus additional lots, together with fixtures, equipment, and inventory for the farm supply business, now called Terry's Husky, for $200,000, plus an additional amount for inventory. The plaintiffs paid $100,000 at the closing of the contract and gave their note for the remaining $100,000, to be paid in monthly installments of $1,338.40 beginning August 1, 1984, with an option in plaintiffs on April 1, 1988, to pay the balance due, and with certain additional payoff rights thereafter. Plaintiffs' note was secured by a real estate mortgage on the land and lots purchased and a security agreement on the equipment and fixtures.

The following provisions of the contract between the parties are particularly noted:

(1) Paragraph 8, which is denominated "Supply and Freight Agreement," provides that for a period of 10 years, plaintiffs were to purchase all petroleum products from the defendant to the extent defendant could supply them. Subparagraph g of paragraph 8 provides that "[i]n the event that BUYERS [plaintiffs] desire to sell any of the premises, tanks, pumps, and pump read-out meters during the period of the supply and freight agreement as described above, SELLER [defendant] shall have first right of refusal to purchase them." The provision then provides that any offer of purchase be conveyed by plaintiffs to defendant, which had 15 days to exercise its right of first refusal.

(2) Paragraph 12 provides as follows:

> The interest of BUYERS [plaintiffs] in and to the premises and tanks, pumps and pump read-outs shall not be assigned to any other person without the express written consent of SELLER [defendant], except to a partnership or corporation owned solely by BUYERS

and/or their spouses. . . . Violation of this clause by BUYERS shall be a material breach of the provisions of this Agreement and shall empower SELLER, at its option, to declare the entire balance due and payable and to pursue such remedies which may be available at law or in equity.

In July 1985, plaintiffs determined, for financial reasons, to terminate the business, and on August 2, 1985, entered into a contract with Alliance Cooperative Association (Co-op) for the sale of the land, lots, fixtures, equipment, and inventory, and providing for a computation of a sales price therefor which in part required payment by the Co-op of the amounts due defendant under plaintiffs' note with the defendant previously described, the balance being due and payable April 1, 1988, and Co-op to give its note therefor secured by a real estate mortgage and security agreement on the property sold. Plaintiffs submitted the proposed contract to defendant, pursuant to the provisions of paragraph 8 of the contract previously noted. Defendant did not exercise its rights under said paragraph but claimed a right to refuse to consent to any such sale under paragraph 12 thereof, and advised it would refuse unless plaintiffs included in the contract with Co-op the supply and freight agreement set out in paragraph 8. Such provision was not included in the contract, and defendant advised it would not consent to the sale.

Plaintiffs then brought this action against defendant for a declaratory judgment as to their rights under the contract, alleging in substance that paragraph 8 controlled, and defendant having failed to exercise its right of first refusal, plaintiffs were free to proceed with their contract with Co-op. Defendant in its answer alleged it had two remedies provided by paragraphs 8 and 12, that plaintiffs had breached the contract by selling to the Co-op without defendant's consent, and that the Co-op was not honoring the supply and freight agreement contained in paragraph 8. Defendant also counterclaimed for damages alleged to have resulted from plaintiffs' breach of the contract by selling to the Co-op without defendant's consent and without the supply and freight agreement's being included. Plaintiffs deny defendant had this choice of remedies and

denied the counterclaim. Upon issues' being joined, plaintiffs filed their motion for summary judgment, and defendant filed its motion for partial summary judgment upon its counterclaim with respect to the issue of plaintiffs' breach of contract.

The trial court sustained plaintiffs' motion for summary judgment, holding that paragraph 8g of the contract of the parties was controlling, that paragraph 12 did not apply, and that plaintiffs were not required to include the supply and freight agreement in the sale to the Co-op. The trial court also overruled defendant's motion for partial summary judgment. From this judgment, defendant has appealed and has assigned as error that the trial court (1) erred in finding paragraph 8 of the contract controlling, (2) erred in finding paragraph 12 of the contract did not apply, (3) erred in finding the supply and freight agreement lapsed by reason of plaintiffs' ceasing to do business, and (4) erred in not finding a genuine issue of fact regarding a showing of good faith by plaintiffs in the performance of the contract.

Paragraphs 8 and 12 of the contract are inconsistent. Paragraph 8 provides that, within a specific timeframe, plaintiffs had a right to sell land and equipment subject only to a right of first refusal by defendant, the latter to be exercised within a specific time and, if not so exercised, plaintiffs could then sell to their purchaser. Paragraph 12, on the other hand, provides that no sale or assignment in land or equipment by plaintiffs may be had without defendant's consent. Such requirement follows paragraph 8 in the contract and is without limitation. Paragraph 8 is more specific than paragraph 12. In such a situation, the proper rule of construction is that the more specific term of the contract will control over the general provision of the contract as it relates to the same subject matter. 17A C.J.S. *Contracts* § 313 (1963). Stated otherwise, "If the apparent inconsistency is between a clause that is general and broadly inclusive in character and one that is more limited and specific in its coverage, the latter should be generally held to operate as a modification and pro tanto nullification of the former." 3 A. Corbin, Corbin on Contracts § 547 at 176 (2d ed. 1960). In this jurisdiction, the rule has been that where general and specific provisions in a contract relate to the same thing,

specific provisions will control over general provisions. *State v. Commercial Casualty Ins. Co.*, 125 Neb. 43, 248 N.W. 807 (1933), cited with approval in *Corso v. Creighton University*, 731 F.2d 529 (8th Cir. 1984). Accordingly, we determine paragraph 8 to be controlling, and defendant having failed to exercise its right of first refusal within the time specified after due tender of the proposed contract to it, defendant may not now complain of plaintiffs' proceeding with the contract of sale to the Co-op.

We further note that a contract provision requiring a seller's consent to any future sale or assignment by the buyer is considered to have a limited application; namely, that such provision is intended as security for the seller, and when such security is not at issue, the provision is not enforceable. The majority view is that a contract provision prohibiting assignment without the vendor's consent does not preclude such assignment or sale if the contract has been fully performed *or if assignee offers and is able to complete performance*. The reason for such rule is that such provision is intended merely to safeguard performance on vendee's part so that when performance has been rendered or is presently offered, the stipulation is of no consequence. Annot., 138 A.L.R. 205 (1942).

To the same effect are the cases of *Wagner v. Cheney*, 16 Neb. 202, 20 N.W. 222 (1884), and *Riffey v. Schulke*, 193 Neb. 317, 227 N.W.2d 4 (1975). *Wagner* also holds that where such provision contains no penalty or forfeiture for its breach, it will not prevent sale or assignment. In this case the contract between the parties contains no such penalty or forfeiture.

We note that nowhere in the record does it appear plaintiffs were in default on any amounts owed defendant. Plaintiffs have paid one-half or more of the total purchase price and secured the balance by mortgage and security agreement, and Co-op in its contract with plaintiffs specifically agreed to pay the debt due from plaintiffs to defendant and to secure the same. No evidence appears that Co-op cannot meet such obligations, or the Co-op's capacity to do so challenged. There is no showing that defendant's security has not been adequately met and continued, and under the general rule above noted,

defendant cannot insist on the consent provision of paragraph 12.

With respect to the supply and freight agreement contained in paragraph 8 of the contract between the parties, there is no provision in such paragraph, or elsewhere in the contract, that if plaintiffs were to sell the land or personal property, they were required to include the supply and freight agreement as a part of the sale. Plaintiffs, upon ceasing business, were no longer required to purchase anything further under such contract and were entitled to sell the property without further consideration thereof.

Defendant argues that there is an issue of good faith involved in plaintiffs' performance under the contract which would bar the granting of summary judgment. Defendant asserts that it was bad faith on plaintiffs' part in not including the supply and freight agreement in the sale contract with Co-op and that plaintiffs are required to prove financial reasons justified their terminating the business.

We note that the supply and freight agreement contains no precondition that must be met before plaintiffs could cease business or sell the property, except for the right of first refusal, and there is no minimum purchase requirement contained therein. We are unwilling, under the facts and pleadings of this case, to read in a condition that plaintiffs must prove good faith before ceasing to operate the business and selling the assets. Even if good faith were an issue, we believe the rule set forth in *HML Corporation v. General Foods Corporation*, 365 F.2d 77 (3d Cir. 1966), is applicable. In a similar situation, where the vendee had no minimum requirement to meet regarding purchases required under a supply agreement, the court held that vendee's notice to vendor that it had no further purchase requirements did not of itself constitute a breach of the agreement. "It follows that since plaintiff [vendor] claimed a breach it was its duty to prove it, and the burden, therefore, rested upon it to show that defendant had acted in bad faith." *Id.* at 83.

We find no evidence in the record that defendant in this case met any such burden or adduced sufficient evidence to raise the issue. Moreover, as we examine the pleadings, we do not find

such issue raised in defendant's answer or counterclaim or in its motion for partial summary judgment. We find defendant's argument is without merit.

Accordingly, we hold that the trial court correctly sustained plaintiffs' motion for summary judgment and overruled defendant's motion for partial summary judgment.

AFFIRMED.