CLARENCE F. OBERMEIER AND ELNORA M. OBERMEIER,
APPELLEES, V. KEITH M. BENNETT AND LINDA M. BENNETT,
APPELLEES, DENNIS BENNETT AND DIANNE BENNETT,
APPELLANTS.
430 N.W.2d 524

Filed October 21, 1988.   No. 86-856.

John R. Hall, of Anderson, Vipperman, Hinman, Hall & Kovanda, for appellants.

Tom D. Briese, of Luebs, Dowding, Beltzer, Leininger, Smith & Busick, for appellees Obermeier.

BOSLAUGH, WHITE, CAPORALE, and GRANT, JJ., and NORTON, D.J.

GRANT, J.

This case arose out of an installment contract for the sale of land. On July 22, 1985, plaintiffs-appellees, Clarence F. and Elnora M. Obermeier (hereinafter Sellers), filed a "Petition in Foreclosure" against defendants Keith M. and Linda M. Bennett (hereinafter Buyers) and defendants-appellants, Dennis and Dianne Bennett (hereinafter Assignees). Keith and Dennis Bennett are brothers. The petition alleged material

waste to the real estate and breach of a contractual provision against assignment as grounds for default and foreclosure. Following a trial, the district court found that the Sellers had a first lien on the property in the amount of $34,100.97, that default had occurred in the nonassignment condition of the contract, and that the Sellers were entitled to have the contract foreclosed and the real estate sold to satisfy the lien. The court specifically found that "the purported assignment of the Real Estate Contract failed in that the agreement of sale between the parties prohibited assignment without prior written permission of the Plaintiffs, and that said prior written permission was not obtained or implied." The Assignees timely appeal. We reverse.

As a preliminary matter, we note that a suit in foreclosure is equitable in nature. *Fisbeck v. Scherbarth, Inc.*, 229 Neb. 453, 428 N.W.2d 141 (1988). In an appeal of an equity action, the Supreme Court tries factual issues de novo on the record, subject to the rule that when credible evidence is in conflict on a material issue of fact, the court considers and may give weight to the fact that the trial court heard and observed the witnesses and accepted one version of facts rather than another. *Id.*

As to the Sellers' allegations of material waste to the real estate, the record reveals only that the Buyers demolished an old granary, a small henhouse, and a one-car garage that was "ready to fall down." They replaced those structures with a 26-by 30-foot milk barn. Although the district court made a general finding that all of the allegations of the petition were true, the record does not establish material waste to the property sufficient to warrant foreclosure of the land contract. As a basis for the foreclosure, the trial court found only that "the purported assignment of the Real Estate Contract failed in that the agreement of sale between the parties prohibited assignment without prior written permission of the Plaintiffs, and said prior written permission was not obtained or implied."

Assignees' sole assignment of error is that the district court erroneously entered its decree of foreclosure on that basis. As a general rule, this court will dispose of cases on appeal on the theory on which they were presented in the trial court. *Cimino v. W. A. Piel, Inc.*, 227 Neb. 196, 416 N.W.2d 505 (1987). Thus, we decline to consider the Sellers' argument, raised for the first

time in this appeal, that since the Assignees failed to establish at trial that the land contract had been assigned in writing, the Assignees have no appealable interest in this matter. The Sellers alleged in their petition the existence of an assignment and proceeded through the trial on the assumption that an assignment had been made. The evidence that there was an assignment was undisputed at trial, and the trial court found there was an assignment, as set out above.

Sellers further contend that because the property in question was sold pursuant to the foreclosure decree and the sale was confirmed by the trial court, this appeal presents only an abstract question and should be dismissed as moot. The only "evidence" of such a sale appears in the Sellers' brief. The record before us is silent as to any disposition of the property. A brief may not expand the evidentiary record and should limit itself to arguments supported by the record. *Father Flanagan's Boys' Home v. Goerke*, 224 Neb. 731, 401 N.W.2d 461 (1987). We decline to consider this portion of the Sellers' argument.

The record shows that on September 8, 1978, the Sellers entered into a contract with the Buyers for the sale of land. The original purchase price was $55,000. The contract provided that after initial payments totaling $11,000 had been made, the remaining balance of $44,000 would be paid in installments of $2,200 plus interest on each January 1, starting January 1, 1980. The parties agreed that the deed to the property would be held in escrow and would be delivered to the Buyers upon their making full payment of the purchase price. The Buyers were required to insure the property and to pay the real estate taxes.

The contract also provided:

BREACH AND ACCELERATION OF CONTRACT. In the event the Buyers shall fail or neglect to pay any installment of principal or interest when due and remains in default thereof for a period of 30 days or fails or neglects to pay the taxes and special assessments, if any, on said property for a period of one year after delinquent, or if Buyers commit waste on said premises, with respect to these items, time is of the essence of this agreement, then the Sellers shall have the option to declare the whole balance of this contract to be due at once, without notice,

and may proceed to foreclose this contract as provided by law.

Three paragraphs concerning taxes, ownership, and escrow arrangements followed, and the last paragraph of the contract states: "And it is further mutually agreed that all covenants and agreements herein contained shall extend to and bind the respective heirs, executors, administrators and assigns of said parties, but that no assignment shall be made of this contract without the written permission of Sellers."

The Buyers took immediate possession of the property and, evidently, the yearly installments were paid, pursuant to the contract, on or before January 1, 1980, through January 1, 1984. In late January 1984, Keith Bennett approached Clarence Obermeier, "inquiring about selling the property on a contract." Obermeier did not agree to that proposal but replied he "would let him sell it if he'd pay the balance on my real estate contract." Keith Bennett unsuccessfully attempted to sell the property at an auction on March 14, 1984.

Keith and Linda Bennett were divorced in May 1984. They had experienced financial difficulties during 1984 that affected their ability to perform under the land contract. On May 3, 1984, Keith Bennett and the Assignees entered into a "lease with option to purchase" the property described in the contract. The Assignees moved to the property in May 1984.

During 1984, Keith Bennett transferred his rights in the land contract to the Assignees for $15,000 plus "what [he] had already paid down on it." No witness knew the exact date of that assignment. Dennis Bennett testified that he and Dianne leased the land from Keith with an option to purchase it, but when Keith realized he "was going bankrupt," Dennis and Dianne took the contract "to protect ourselves on it." Keith Bennett testified he entered into a formal agreement with Dennis which was "the same agreement that I had with Clarence [Obermeier] on the insurance and the payments." No objection was made to this testimony. Neither the Buyers nor the Assignees produced a written copy of the assignment at trial, nor was one requested. A bankruptcy petition filed by Keith Bennett on January 21, 1985, states that in March of 1984, he made a transfer of the land contract to his brother,

Dennis Bennett, for $15,000 down, paid to the Cotesfield Bank, and that Dennis had assumed the land contract. Keith Bennett testified he had sold the land contract to Dennis. The disposition of the interest in the land contract of Linda Bennett, Keith's wife, is not shown in the record. Keith Bennett did not notify the Sellers of his bankruptcy proceeding.

It is clear that the Sellers did not consent to an assignment of the land contract. Clarence Obermeier testified that when Keith Bennett asked him about selling the property in March 1984, he told Keith he wanted the balance of the contract paid in full. The record shows no other communication between the Buyers and Sellers about a transfer of the property. Obermeier further testified that he "was really dealing with Keith and Linda Bennett" and was not interested in dealing with others with respect to the contract. The Buyers and Assignees made no attempt to notify the Sellers that the land contract had been assigned. Dennis Bennett did not inform the escrow agent of his interest in the property.

On December 28, 1984, Keith Bennett personally delivered a cashier's check to Clarence Obermeier in payment of the January 1, 1985, installment. Obermeier accepted the payment not knowing of the Assignees' ownership claim or that the money actually was supplied by the Assignees.

Clarence Obermeier first became aware "in a roundabout way" that the Assignees were occupying the property after Keith Bennett moved into Cotesfield in 1984. He became aware that the Assignees claimed an ownership interest in the property on January 18, 1985, when his copy of the insurance policy on the property showed the Assignees' names. On January 25, 1985, Obermeier saw a notice of Keith Bennett's bankruptcy published in the Omaha paper and, during the latter part of January 1985, discovered that Keith Bennett's name had been replaced on the Howard County property tax list with that of Dennis Bennett. He testified that he did not think it was his responsibility to contact either Keith or Dennis about his discoveries.

On December 31, 1985, the Assignees tendered payment of the January 1, 1986, installment to the escrow agent. That payment was refused. Clarence Obermeier refused to accept the

payment because "it wasn't coming . . . from the one that owned the contract." He considered that the contract had been breached. The Assignees had at all times paid property taxes and maintained an insurance policy on the property, pursuant to the terms of the contract, and all payments under the contract had been made or tendered.

The issue governing the outcome of this case involves the enforceability of the provision prohibiting assignment of the land contract without the written permission of the Sellers. We agree with the appellants Assignees that, under the facts presented here, foreclosure of the contract was an improper remedy for a breach of this provision.

Our decision is based on a line of cases originating with *Wagner v. Cheney*, 16 Neb. 202, 20 N.W. 222 (1884). In that case, Cheney entered into a written contract with Nancy King for the sale of land. The contract provided that upon timely payment of half the principal, Cheney would give a deed to King and take a mortgage to secure the rest of the purchase price. The contract further provided that no assignment of the contract "shall be valid unless with the written consent of said defendant Cheney . . . ." *Id.* at 203, 20 N.W. at 222. Nancy King subsequently assigned the contract to J.H. King, who assigned it to Wagner, the plaintiff. All payments were made when due, but when Wagner demanded the deed and mortgage upon payment of half the principal, Cheney refused on the ground that he had never consented to the assignment to Wagner. The court affirmed the trial court's decision in favor of Wagner, stating that no penalty was attached to the nonassignment condition. The court noted that Cheney's security had in no way been impaired by the assignment to Wagner and that under those circumstances, Cheney could not successfully defend the action by merely alleging he had not consented to the assignment.

In *Riffey v. Schulke*, 193 Neb. 317, 227 N.W.2d 4 (1975), the parties entered into an installment contract for the sale of land to be used as a golf course. The contract provided that neither party could sell or assign the contract without the written consent of the other. Schulke, the buyer, mortgaged his interest in the property and used the proceeds of the mortgage to

improve the property and make interest payments on the contract. Riffey subsequently brought an action for strict foreclosure and ejectment. The mortgagee intervened in the action, alleging Schulke had mortgaged his interest in the property to the intervenor, and offered to pay the balance due Riffey on the contract. Riffey alleged the mortgage was void under the provision of the contract prohibiting assignment without the written consent of the other party. We held:

> A provision in a contract for the sale of land prohibiting an assignment of the contract without the consent of the other party is usually considered to be a provision to safeguard performance of the contract. Where the contract has been performed, or performance has been tendered, as in this case, the provision is usually considered unenforceable. [Citations omitted.]
>
> The entire amount due the plaintiff was tendered to him by payment of more than that amount into court by the intervener [mortgagee]. Under these circumstances, the provision in the contract against assignment did not furnish a defense to the plaintiff against performance.

*Id*. at 320-21, 227 N.W.2d at 6-7.

In *Martin v. Baxter*, 198 Neb. 640, 254 N.W.2d 420 (1977), Martins agreed to sell a farm to Baxter pursuant to an installment contract. The contract provided that the agreement could not be assigned by the buyer without the written consent of the sellers. Baxter subsequently entered into a separate contract to sell the land to another for $195,600, subject to Baxter's land contract with Martins. At that time, all payments on the original contract had been made, but Martins elected to declare a forfeiture and refused tender of payments thereafter. The trial court refused strict foreclosure. This court affirmed, holding that the case was governed by the principles announced in *Riffey v. Schulke, supra*.

In *Panwitz v. Miller Farm-Home Oil Service*, 228 Neb. 220, 224, 422 N.W.2d 63, 66 (1988), we stated:

> We further note that a contract provision requiring a seller's consent to any future sale or assignment by the buyer is considered to have a limited application; namely that such provision is intended as security for the seller,

and when such security is not at issue, the provision is not enforceable. The majority view is that a contract provision prohibiting assignment without the vendor's consent does not preclude such assignment or sale if the contract has been fully performed *or if assignee offers and is able to complete performance*. The reason for such rule is that such provision is intended merely to safeguard performance on vendee's part so that when performance has been rendered or is presently offered, the stipulation is of no consequence.

(Emphasis in original.) See, also, *First Bank & Trust v. Novak*, 12 Kan. App. 2d 407, 747 P.2d 850 (1987).

The land contract which is the source of this dispute provides for foreclosure under three circumstances only: (1) nonpayment of principal or interest, (2) nonpayment of taxes and special assessments, or (3) waste. We have already determined that the record does not support a finding of material waste to the property. The Buyers and Assignees paid all taxes on the property, purchased insurance, and properly tendered all payments of principal and interest until the Sellers refused to accept payment from the Assignees on December 31, 1985. The Sellers alleged only waste and the assignment of the contract without the written permission of the sellers as the bases for foreclosure. There is no foreclosure provision linked to the nonassignment clause, which is in the final sentence of the contract. For some reason the parties chose to treat the nonassignability provision in a different manner than other possible breaches of the agreement.

We reject the Sellers' contention that foreclosure was necessary in this case to protect their expectations that the Buyers "would not assign the contract so as to allow a stranger to the transaction to control the security for the debt . . . ." Brief for appellees Obermeier at 12. The Assignees performed the contractual duties of the Buyers for some time and properly tendered future performance to the Sellers. The record shows no concern on the part of the Sellers as to the Assignees' ability to perform, but only statements that the Sellers were not interested in dealing with anyone other than Keith and Linda Bennett. At the time of such statements, a divorce had taken

place between those parties and Keith Bennett had filed bankruptcy. Under the circumstances in this case, the provision of the contract prohibiting assignment of the contract without the permission of the Sellers is unenforceable.

The judgment of the district court is reversed and the cause remanded for further proceedings.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.