# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 01-1875

———————

LG&E Capital Corp.,                      *
                                         *
            Plaintiff-Appellee,          *
                                         *   Appeal from the United States
      v.                                 *   District Court for the
                                         *   District of Nebraska.
Tenaska VI, L.P.; Tenaska                *
Grimes Partners, L.P.,                   *
                                         *
            Defendants-Appellants.       *

———————

Submitted:  November 15, 2001

Filed:  May 17, 2002

———————

Before BYE and BEAM, Circuit Judges, and GOLDBERG,[1] Judge.

———————

BYE, Circuit Judge.

    This is a dispute over the exercise of an option to acquire a 10% interest in a limited partnership.  Tenaska VI, L.P., and Tenaska Grimes Partners, L.P., two affiliates of Tenaska, Inc. (collectively, Tenaska) who held a majority interest in the limited partnership, allege LG&E Capital Corp. violated the option's anti-assignment provision by exercising the option with an agreement already in place to transfer the

———————

[1]The Honorable Richard W. Goldberg, Judge, United States Court of International Trade, sitting by designation.

interest to a third party. Tenaska also alleges LG&E's failure to disclose the reason for requesting an extension of the option deadline (which Tenaska granted) should void the exercise of the option. The district court[2] rejected Tenaska's claims. We affirm.

I

In 1995, four entities — Tenaska, KU Capitol Corp. (KUCC), and affiliates of Illinova Generating Co. (Illinova) and Continental Energy Services (Continental) — formed a partnership called Tenaska Power Partners (Power Partners) to develop power plant projects in the western United States. Tenaska served as managing partner.

In 1997, Power Partners considered developing a power plant in Grimes County, Texas. After Power Partners spent over $1 million on the project, including $150,000 of KUCC's money, Tenaska determined the Grimes plant did not meet Power Partner's criteria for project development. When the other partners objected, Tenaska invited Continental and Illinova to form a separate limited partnership called Tenaska Frontier Partners, Ltd. (Frontier Partners) to develop and operate the Grimes plant. Tenaska wanted to exclude KUCC because Howard Hawks, Tenaska's CEO/chairman/president, disagreed with positions taken by KUCC in the operation and financing of Power Partners. The other partners, however, believed KUCC should be allowed to join the new limited partnership. Tenaska ultimately relented and invited KUCC to join Frontier Partners, but by that time it was too late for KUCC to obtain corporate approval. So, instead of joining Frontier Partners outright, KUCC negotiated an option to participate in Frontier Partners.

---

[2]The Honorable Thomas M. Shanahan, United States District Judge for the District of Nebraska.

The option allowed KUCC to acquire a 10% interest in Frontier Partners in exchange for KUCC's promise to advance up to $1.5 million to fund the Grimes plant, and other funding promises. The option agreement contained an anti-assignment provision which stated "[t]his Agreement may not be assigned by any Party to any other Person." App. 927. The agreement placed no restrictions, however, on KUCC's ability to transfer the interest after the option was exercised. LG&E had to use or lose the option by June 30, 1998.

As a result of a corporate merger in the spring of 1998, LG&E became KUCC's parent company and succeeded to KUCC's rights and obligations under the option agreement. LG&E evaluated whether to exercise the option and ultimately decided not to participate in Frontier Partners. At the same time, Illinova wanted a bigger share of the limited partnership (Illinova had 10%, Continental 25%, and the two Tenaska affiliates 65%), and approached LG&E about exercising the option for the sole purpose of immediately transferring the interest to it. LG&E was willing to deal, but it wanted to be fully protected from the economic consequences of exercising the option. LG&E therefore insisted that an agreement be in place with Illinova prior to the option's exercise.

By June 30, 1998, the date the option was to expire, LG&E had not reached an agreement with Illinova. LG&E called Tenaska and asked for a two-week extension. LG&E did not say why it needed the extension and Tenaska did not ask. Tenaska granted a one-week extension. During that week, LG&E and Illinova finalized a "Memorandum of Agreement" in which Illinova agreed to purchase LG&E's interest *after* LG&E exercised the option. Illinova also agreed to indemnify LG&E for all financial obligations resulting from the exercise of the option.

On July 6, 1998, LG&E exercised the option and then immediately transferred the interest to Illinova. LG&E waited about a month before telling Tenaska about the transfer. By that time, the financial closing on the Grimes plant was just a week

away. Tenaska claims it objected to the transfer, but because it was concerned about the closing, Tenaska represented to the lender that it approved of the transfer. Tenaska assured LG&E in correspondence regarding LG&E's financial obligations that it would "straighten out all of the disarray after financial closing." App. 1010.

After exercising the option, LG&E provided letters of credit for the project totaling $8.58 million, which Illinova independently guaranteed. In addition, after the material terms of the "Memorandum of Agreement" were disclosed, Tenaska accepted certain payments directly from Illinova to satisfy funding obligations for the project. But after a successful closing, Tenaska refused to convey the 10% interest to LG&E. Tenaska claimed the exercise of the option was void because it would not have extended the option deadline if LG&E had disclosed the reason for requesting the extension. Tenaska also claimed LG&E's exercise of the option — with an agreement already in place to transfer the interest to Illinova — violated the option's anti-assignment provision.

LG&E filed an action in federal district court alleging breach of contract and requesting the court to order a transfer of the interest. The parties brought cross-motions for summary judgment. The district court found in LG&E's favor and ordered Tenaska to transfer the 10% interest to LG&E. Tenaska timely appealed the district court's decision.

II

The district court's determination that LG&E had no duty to disclose the reason for requesting an extension of the option deadline, as well as its determination that the LG&E/Illinova transaction was not an impermissible assignment of the option, present issues of Nebraska law we review de novo. See ACTONet, Ltd. v. Allou Health & Beauty Care, 219 F.3d 836, 843 (8th Cir. 2000).

A.    The Request to Extend the Option Deadline

Tenaska contends LG&E's failure to disclose the reason for requesting an extension of the option deadline supports a claim of fraudulent concealment under Nebraska law.  A claim of fraudulent concealment consists of several elements, the first of which requires proof that a party had a duty to disclose a material fact. Streeks, Inc. v. Diamond Hill Farms, Inc., 605 N.W.2d 110, 118 (Neb. 2000).  The parties dispute whether Tenaska has shown LG&E had a duty to disclose its reason for requesting an extension of the option deadline.

In determining whether a duty to disclose has been triggered, Nebraska follows the Restatement (Second) of Torts, Streeks, 605 N.W.2d at 118-19, which provides in relevant part that

> [o]ne party to a business transaction is under a duty to exercise reasonable care to disclose to the other before the transaction is consummated,
>
>> (a) matters known to him that the other is entitled to know because of a fiduciary or other similar relation of trust and confidence between them; and
>>
>> . . .
>>
>> (e) facts basic to the transaction, if he knows that the other is about to enter into it under a mistake as to them, and that the other, because of the relationship between them, the customs of the trade or other objective circumstances, would reasonably expect a disclosure of those facts.

Restatement (Second) of Torts § 551(2) (1977).  Tenaska relies on these provisions to contend LG&E had an obligation to disclose the reason for the requested extension.

1.      Fiduciary Relationship

Tenaska contends LG&E owed it a fiduciary duty because of the contractual relationship between the parties, that is, the option agreement.  We disagree.  The general rule is that a contract between two parties does not give rise to a fiduciary relationship or trigger a duty to disclose material facts.  Lincoln Benefit Life Co. v. Edwards, 45 F. Supp. 2d 722, 747 (D. Neb. 1999), aff'd, 243 F.3d 457 (8th Cir. 2001).  Tenaska nevertheless argues a fiduciary relationship arose because LG&E was planning to assign the option in violation of the contract.  We are not persuaded by that argument because it presupposes LG&E's transaction with Illinova breached the contract, a premise we reject.  Furthermore, it suggests a party's intended breach of contract triggers a fiduciary duty to disclose that intention.  That would transform many breach of contract actions into tort actions involving a fiduciary duty to disclose, a proposition we reject out of hand.

Tenaska next asserts that, if the option agreement alone did not create a duty to disclose, LG&E's other business relationships with Tenaska did.  As a result of its acquisition of KUCC, LG&E obtained interests in several Tenaska projects.  Tenaska argues those ancillary business relationships triggered a fiduciary duty, as well as LG&E's *prospective* partnership in Frontier Partners.  We disagree.  Whatever fiduciary duties LG&E may have owed Tenaska in other Tenaska projects were limited to those ventures.  E.g., Silverman v. Miller (In re Silverman), 155 B.R. 362, 374 (Bankr. E.D.N.C. 1993) ("[F]iduciary status . . . cannot be extended beyond [this corporate relationship] to apply to all subsequent business dealings between these parties."); GCM, Inc. v. Ky. Cent. Life Ins. Co., 947 P.2d 143, 150 (N.M. 1997) ("Whether a partner owes a fiduciary duty to another partner or the partnership, the scope of that duty is limited to partnership dealings."); Lipinski v. Lipinski, 35 N.W.2d 708, 713 (Minn. 1949) (addressing a joint venture and holding that "the relationship between the parties was fiduciary in character . . . but that such relationship and its obligations were limited to the enterprise in which they were

-6-

mutually engaged."). In addition, the partnership agreement for Frontier Partners was governed by Texas law, which imposes no pre-formation duties on a prospective partner. Tex. Rev. Civ. Stat. Ann. art. 6132b-4.04; see also Neb. Rev. Stat. § 67-424 (eliminating the fiduciary duty Nebraska had previously recognized during the formation stage of a partnership).

Finally, Tenaska argues LG&E had a fiduciary duty to disclose the reason for requesting the extension of the option deadline because Illinova, as an existing partner, breached a fiduciary duty to Tenaska by negotiating with LG&E behind Tenaska's back. Tenaska contends Illinova's fiduciary duties should extend to LG&E. We disagree with this novel position, for which Tenaska cites no authority. Whether Illinova breached a fiduciary duty to Tenaska by dealing with LG&E is entirely separate, we believe, from whether LG&E itself had a duty to disclose its reason for requesting an extension.

2.      Facts Basic to the Transaction

Tenaska also claims LG&E had an obligation to disclose the reason for the extension request because it was a "fact basic to the transaction." The district court concluded LG&E's intent to sell the prospective partnership agreement to Illinova did not concern the basis or essence of LG&E's transaction with Tenaska, and thus did not give rise to a duty to disclose. We agree with the district court.

The facts basic to the transaction between LG&E and Tenaska concerned the value of the 10% partnership interest, and the other consideration exchanged for the right to the option. LG&E's possible intentions after exercising the option were immaterial to the option agreement itself. Thus, when LG&E requested an extension, it was not obligated to disclose its intention to sell to Illinova because that transaction was not a fact basic to the transaction with Tenaska.

B.      Violation of the Anti-Assignment Provision

Tenaska argues the LG&E/Illinova transaction should be construed as an assignment of the option (thereby breaching the anti-assignment provision), because LG&E had already reached an agreeement with Illinova to transfer the 10% interest before the option was exercised.  We disagree for several reasons.

First, we conclude Tenaska is estopped from contending LG&E breached the option's anti-assignment provision.  Tenaska received a copy of the LG&E/Illinova "Memorandum of Agreement" on August 22, 1998, and thus knew all the material details regarding the LG&E/Illinova transaction on that date.  Nevertheless, Tenaska subsequently accepted letters of credit from LG&E totaling $8.58 million.  Tenaska also accepted money directly from Illinova in response to a cash call to fund a turbine payment for the Grimes project.  The cash call occurred after the "Memorandum of Agreement" had been disclosed and Tenaska accepted Illinova's payments without reserving its right to contest the exercise of the option.  Thus, contrary to the dissent's suggestion, it is undisputed that Tenaska accepted benefits resulting from LG&E's exercise of the option and subsequent sale to Illinova with full knowledge of the material terms of the "Memorandum of Agreement."  Despite this, Tenaska now wants to avoid its corresponding obligation to transfer the interest.  "The acceptance of any benefit from a transaction or contract, with knowledge or notice of the facts and rights, will create an estoppel."  Baye v. Airlite Plastics Co., 618 N.W.2d 145, 150 (Neb. 2000) (collecting Nebraska cases setting forth the test for applying estoppel in a contract case); see also Total Petroleum, Inc. v. Davis, 822 F.2d 734, 737 (8th Cir. 1987) (holding equitable estoppel prevents "a party who has full knowledge of the facts from accepting the benefits of a transaction, contract, or order and subsequently taking an inconsistent position to avoid corresponding obligations.").[3]

_____

[3]The dissent relies on a fraud case, Nathan v. McKernan, 101 N.W.2d 756, 768 (Neb. 1960), which is, of course, inapposite because we are here concerned with

-8-

Second, even if we turn a blind eye to the estoppel issue, and further assume the LG&E/Illinova transaction constituted an assignment of the option, we still could not side with Tenaska. In several cases involving land-sale contracts, the Nebraska Supreme Court has refused to enforce anti-assignment provisions where the "contract has been fully performed *or if assignee offers and is able to complete performance*." Panwitz v. Miller Farm-Home Oil Serv., 422 N.W.2d 63, 66 (Neb. 1988) (emphasis in original); see also Obermeier v. Bennett, 430 N.W.2d 524, 528-29 (Neb. 1988); Martin v. Baxter, 254 N.W.2d 420, 421 (Neb. 1977); Riffey v. Schulke, 227 N.W.2d 4, 6-7 (Neb. 1975); Wagner v. Cheney, 20 N.W. 222, 223 (Neb. 1884). The Nebraska Supreme Court recently applied this principle to a case outside the land-sale context. Folgers Architects Ltd. v. Kerns, 633 N.W.2d 114, 126-27 (Neb. 2001) (citing Panwitz). The court noted "the intent of [a] provision against assignment of rights under a contract [is] generally [] to allow the parties to choose with whom they contract," and refused to enforce an anti-assignment provision where the assignment did not affect the parties' actual performance of the contract. Id. When read together, we believe these cases indicate Nebraska would not enforce an anti-assignment provision under the circumstances involved in this case. Clearly, the alleged assignee, Illinova, had offered and was able to complete performance of its obligations under the limited partnership.

Furthermore, Tenaska can hardly complain that its right to choose with whom it contracts is hindered, since Illinova is already an existing partner in the limited partnership. The dissent disagrees, emphasizing Tenaska's "right to control with whom and at what time it chose to offer a percentage of its own partnership interest." Post at 16. But the facts of record undercut this argument. Before the LG&E option was exercised, Tenaska had engaged in negotiations to transfer to Illinova an additional 7.5% interest in the limited partnership in the event LG&E elected not to participate in the partnership. App. 311-12, 503. Indeed, the facts suggest Tenaska

Tenaska's breach-of-contract claim, not its fraud claim.

-9-

was more than willing to transfer some of its partnership share to Illinova, so long as Tenaska received the financial benefit of that transaction. See App. 221 (recounting Hawks' displeasure with the LG&E/Illinova transaction merely "[b]ecause I didn't get anything.").

Finally, and most importantly, the LG&E/Illinova transaction was a permissible sale of the interest following an exercise of the option, and did not constitute an assignment of the option itself. Under Nebraska law, "the intention of the assignor must be to transfer a *present* interest in the debt or fund or subject matter; if this is clearly expressed, the transaction is an assignment; otherwise not." Tilden v. Beckmann, 278 N.W.2d 581, 586 (Neb. 1979) (emphasis added). Tenaska cannot show that the "Memorandum of Agreement" reflects LG&E's clear intention to transfer to Illinova a *present* interest in the option agreement. The "Memorandum of Agreement" states that LG&E "hereby grants [Illinova] the exclusive right and option to purchase the KUCC Partnership Interest at any time *after* the transfer of such Partnership Interest to [LG&E] pursuant to the Option Agreement." App. 693 (emphasis added). Thus, the "Memorandum of Agreement" expressly sets forth LG&E's intention to transfer a *future* interest should it exercise the option.

In Craig v. Farmers Mut. Ins. Co., 476 N.W.2d 529 (Neb. 1991), the Nebraska Supreme Court applied Tilden to the assignment provisions of a ranch sale agreement, and drew a clear distinction between agreements transferring present and future interests. Id. at 531-32. The ranch at issue was an asset of a bankrupt corporation, to which the bankruptcy trustee, Craig, was found to have title in late 1986. In February 1987, Craig purchased a policy from Farmers Mutual that provided property damage coverage for certain ranchhouses and buildings, then made attempts to sell the property. Before Craig negotiated a sale, some of the ranch buildings were vandalized. In August 1987, Craig sold the ranch in an agreement that provided

Seller [Craig] shall assign to Buyer [Big B, Inc.] all right, title and interest of Seller to any insurance proceeds for damage in regard to any claims prior to the date of this Agreement . . . and for damage in regard to any claim subsequent to the date of this Agreement . . . provided, however, that Buyer shall use any insurance proceeds to repair or improve the property.

Id.

In the suit brought by Craig to recover insurance proceeds for the vandalism, Farmers Mutual argued that Craig assigned his entire interest in the insurance contract to Big B, and therefore was not the proper party and lacked standing to bring the suit against Farmers Mutual. Id. at 532. Craig contended "the language of the sale agreement indicates an agreement for *future* assignment of interest in the proceeds of an insurance policy" and that while the insurance proceeds were assigned, the cause of action to obtain the proceeds was not. Id. (emphasis added). The Nebraska Supreme Court agreed, stating "the evidence shows that Craig had no intent to transfer a present interest in the policy, but, rather, that he agreed to transfer the proceeds, if any, of the policy when those proceeds were obtained." Id.

The LG&E/Illinova "Memorandum of Agreement" is comparable to the Craig/Big B ranch sale agreement. Neither agreement expresses an intent to transfer a present interest in the subject matter of the agreement. Both agreements demonstrate an intent to transfer the subject matter in the future should that interest be obtained. We believe the present/future interest distinction made in Craig controls this case, and thus conclude the LG&E/Illinova transaction did not constitute an impermissible assignment of the option.

The dissent claims section 3 of the "Memorandum of Agreement" made Illinova "obligated for all financial burdens associated with the option interest *before LG&E even became a partner of TFP*." Post at 20 (emphasis added). We disagree.

-11-

Section 3 sets forth the manner in which the purchase price of the partnership interest was to be calculated — that is its clear and only purpose. One of the three components of the purchase price was the amount needed to reimburse LG&E for any funding obligations it might incur prior to exercising its option. App. 694. The agreement's reference to that amount as part of the purchase price did not somehow impose a present financial obligation upon Illinova (triggered before LG&E even exercised the option or before Illinova had purchased the interest), and thus did not transform the "Memorandum of Agreement" into the transfer of a present interest in the option agreement.

III

We feel obliged to respond to an argument Tenaska did not make in the district court, and did not make on appeal, but which the dissent raises for the first time. The dissent contends LG&E breached the Power Partners' limited partnership agreement, specifically, that the Illinova/LG&E transaction violates section 14.3(iii), which the dissent construes as a notice provision. Post at 17-19 & n.7.

First, we disagree that section 14.3(iii) operates as a notice provision. That section provides, in its entirety, that "no Partnership interest may be transferred by sale, transfer, or otherwise if: . . . (iii) such transfer would adversely affect the financial and operating integrity of the Partnership, any individual Partner, Parent, or Affiliate thereof." App. 882. Thus, the partnership could refuse to approve a transfer of interest because the transfer "would adversely affect the financial and operating integrity of the Partnership," but not because a partner failed to give notice prior to the transfer.

Second, Tenaska never claimed or argued in the district court (or before this court) that LG&E breached the limited partnership agreement, either on the ground the transfer would adversely affect the financial and operating integrity of the

-12-

partnership, or because of an alleged deficiency in notice. Therefore, any such claim has been waived. Turpin v. County of Rock, 262 F.3d 779, 782 (8th Cir. 2001).

Finally, the dissent suggests LG&E violated the partnership agreement to the extent the agreement incorporates the notice requirements of the Texas Revised Partnership Act. See post at 19. But Tex. Rev. Civ. Stat. Ann. 6132b-5.03(d) addresses a *partnership's* duty to give effect to a transferee's rights after receiving notice of a transfer: the statute does not impose a duty on the *transferor* to give notice to the partnership prior to the transfer. It is undisputed that LG&E notified Tenaska it had transferred its interest to Illinova — this dispute concerns Tenaska's refusal to give effect to Illinova's (the transferee's) rights after receiving notice. Thus, the dissent's suggestion that Texas law and the limited partnership agreement imposed a pre-transfer notice obligation upon LG&E is simply unfounded.

IV

We affirm the judgment of the district court in all respects.

BEAM, Circuit Judge, dissenting.

Because I believe the anti-assignment provision of the option agreement controls the outcome here, I dissent. I adopt the facts set forth in the court's opinion with one clarification. The option agreement "placed no restrictions . . . on KUCC's ability to transfer the interest after the option was exercised," ante at 3, only because once the option was exercised, the Tenaska Frontier Partners, Ltd. ("TFP") partnership agreement controlled the party's rights regarding post-exercise transfers, not the option agreement. So, there was no need for the option agreement to be concerned with these future requirements. I additionally note that at all times, I refer to KUCC as LG&E for practical purposes in this dissent.

-13-

LG&E violated the anti-assignment provision of the option agreement when it attempted to exercise the option and carry out its duties under the option agreement as a strawman for the real party in interest, Illinova. LG&E did not merely transfer its economic interest in TFP to Illinova, but rather purported to transfer its entire partnership interest whereby Illinova would be substituted for LG&E as partner, thus increasing Illinova's stake in TFP. The decisions of the district court as well as this court permit this transfer without limitation and I disagree. The court partially refutes Tenaska's claim of fraudulent concealment by determining that LG&E had no duty to disclose the reason for requesting an extension of the option deadline. However, we need not reach this issue because LG&E's purported exercise of the option was a breach of contract and ineffective.

First, Tenaska is not estopped from contending LG&E breached the option's anti-assignment provision, contrary to the court's conclusion. In a claim of contract fraud, "'acts in affirmance of the contract amount to a waiver of the fraud only where they are done with full knowledge of the fraud and of all material facts and with the intention clearly manifested of abiding by the contract and waiving all right to recover for the deception.'" Nathan v. McKernan, 101 N.W.2d 756, 768 (Neb. 1960) (quoting Dargue v. Chaput, 88 N.W.2d 148, 158 (Neb. 1958) (quoting 24 Am. Jur. *Fraud and Deceit* § 214)).[4] Thus, in its claim of fraudulent concealment, Tenaska is

---

[4]The court cites Baye v. Airlite Plastics Co., 618 N.W.2d 145, 150 (Neb. 2000) for the proposition that "[t]he acceptance of any benefit from a transaction or contract, with knowledge or notice of the facts and rights, will create an estoppel." In Baye, however, the party was challenging the validity of the contract under which the defendant had accepted money annually. The Nebraska Supreme Court essentially held that an assertion of invalidity is nullified by the acceptance of the benefits. Id. at 150-51. Baye does not, however, deal with a claim of fraudulent concealment in the performance of a contract as we have here. In this case, Tenaska is not arguing that the option agreement is invalid, but that LG&E engaged in fraudulent concealment in relation to the exercise of LG&E's option, which concealment resulted in a breach of the option contract. Thus, Nathan, not Baye, is on point legally and

-14-

estopped from contending LG&E breached the option agreement only if the facts are undisputed regarding Tenaska's knowledge of the Memorandum of Agreement ("MOA") between LG&E and Illinova, and that when Tenaska proceeded with the closing of the Grimes project in spite of that alleged knowledge, it did so with the intent to waive all right to object to LG&E's deception.[5] These facts are clearly in dispute, and summary judgment cannot be supported as a matter of law on this issue.

Second, the court asserts that even if the LG&E/Illinova transaction constituted an assignment of the option, LG&E did not breach the anti-assignment provision because Illinova could presumably meet LG&E's obligations in the TFP partnership. I wholly disagree that "Tenaska can hardly complain that its right to choose with whom it contracts is hindered, since Illinova is already an existing partner in the

---

factually and, as such, Nathan presents the apposite precedent. Estoppel in this instance requires proof of knowledge *and* intent, both of which are issues of fact more appropriately left for the fact finder in this instance.

[5]The court states that contrary to my suggestion in dissent "it is undisputed that Tenaska accepted benefits . . . with full knowledge of the material terms of the 'Memorandum of Agreement.'" Ante at 8. I respectfully suggest that this argument both ignores other material facts and substantively misses the point. The MOA between LG&E and Illinova was signed on June 30, 1998. LG&E purported to exercise the option on July 6, 1998, and Tenaska was informed of the MOA transaction on August 18, 1998, eight days before the scheduled closing with the lenders financing the construction of the power plant on August 26, 1998. The record discloses that TFP and Tenaska were concerned that a full blown dispute with LG&E at this late date would jeopardize the financial arrangements. From this "between a rock and a hard place" position, the TFP partners proceeded with the closing. However, Tenaska by letter to LG&E dated August 24, 1998, concerning the closing, stated "[w]e can straighten out all of the disarray after financial closing." This, of course, is hardly the stuff of knowing and intentional waiver of the claim of fraudulent deception intertwined with breach of contract. Indeed, under precedent established by Nathan, the court's contention clearly fails to pass muster under Nebraska law.

-15-

limited partnership." <u>Ante</u> at 9. Undoubtedly, parties have the right to freely contract.[6] Tenaska certainly had the right to control with whom and at what time it chose to offer a percentage of its own partnership interest. The difference between Illinova's existing ten percent partnership interest and the increase to a twenty percent interest by way of the agreement with LG&E is significant, make no mistake. Any speculation to the contrary only diminishes long-standing contract and partnership principles. Whether Illinova could presumably fulfill LG&E's obligations is irrelevant.

Likening this situation to one that involves the sale of land is misplaced. <u>See</u> <u>Panwitz v. Miller Farm-Home Oil Serv., Inc.</u>, 422 N.W.2d 63, 66 (Neb. 1988) (holding that in a vendor/vendee relationship, the majority view is that if the assignee offers and is able to complete performance, a contract provision requiring a seller's consent has limited application). A land-sale contract is wholly different than an interest in a partnership, which carries with it ongoing obligations, liabilities and

---

[6]The court contends that the fundamental right of a partner to limit, by contract, its right to associate with whomever it pleases and to whatever degree is undercut by Tenaska's purported negotiations with Illinova for a 7.5 percent interest if LG&E failed to exercise its option for 10 percent. The court's argument, I respectfully suggest, misstates the record. The purported option agreement referred to by the court appears as Exhibit 35 at App. 503 of the record on appeal and is neither the option agreement at issue in this case nor a proposed option representing negotiations between Tenaska and Illinova. Exhibit 35 (App. 501-507) appears to have provided the basis for a pre-formation discussion with Illinova concerning a potential initial TFP partnership interest. On the other hand, the option at issue here is not an option granted for an initial stake in the limited partnership but rather an option by partner Tenaska granting LG&E a right to acquire a portion of Tenaska's partnership share obtained as part of the original formation of the TFP partnership. Rather than undercutting the existence of Tenaska's fundamental contract rights, these negotiations simply highlight the fact that every partner and partnership, absent partnership agreement language to the contrary, has the right to pick and choose the identity, timing and amount of partnership interest that it may wish another to acquire.

duties. Thus, it is not for a court to determine that since Illinova is an existing partner of TFP, Tenaska necessarily would have sold Illinova this additional ten percent interest in TFP; a sort of "no harm, no foul" argument.

The district court also adopted the "no harm, no foul" approach when it held that neither the option agreement nor the TFP partnership agreement restrict the transfer of the interest once the option is exercised, thus presuming that the transfer of partnership interests is freely permissible. Once LG&E exercises its option and gains an interest in the TFP partnership, it is subject to the transfer restrictions set forth in the partnership agreement, and the option agreement is inapplicable. Under the partnership agreement, LG&E's ability to transfer its interest is subject to limitations. One such limitation is that no partnership interest may be transferred under the TFP partnership agreement under any circumstance if such transfer would adversely affect the financial and operating integrity of the partnership, any individual partner, parent or affiliate thereof. TFP Limited Partnership Agreement, § 14.3(iii), App. 0882. Further, even if the partnership approves of a transfer, LG&E is not released from its obligations under the agreement unless the executive review committee ("ERC") of the partnership votes affirmatively to do so. Id. at § 14.1.1, App. 0881. Even the MOA contemplates that the transfer of LG&E's partnership interest to Illinova is limited by the affirmative vote of the ERC. Memorandum of Agreement, § 2.2.

Section 14.3(iii) of the partnership agreement, which must be satisfied before any transfer pursuant to section 14.1 may be considered, and which restricts transfers that adversely affect the financial and operating integrity of any partner or the partnership, clearly implies that the transferor partner must give notice to the partnership and the remaining partners prior to a transfer of the transferor's interest.[7]

---

[7]The court takes me to task for seeing a "notice" requirement in section 14.3(iii) of the partnership agreement saying, in part, "[t]hus, the dissent's suggestion that

-17-

In fact, it is a basic tenet of partnership law that a transfer of more than a partner's economic rights in the partnership requires partner and partnership consent, unless the partnership agreement provides otherwise.[8]  Tex. Rev. Civ. Stat. Ann. 6132b-4.01; Aztec Petroleum Corp. v. MHM Co., 703 S.W.2d 290, 293 (Tex. App. 1985). Anything less than this limitation on alienability creates a risk that the organization

Texas law and the limited partnership agreement imposed a pre-transfer notice obligation upon LG&E is simply unfounded." Ante at 13.  I again, respectfully suggest that it is the court's contract and statutory analysis that is unfounded.   What the court apparently fails to notice is that the partnership agreement states at the beginning of section 14.1 (containing thereafter section 14.1.1) the following: "[e]xcept as provided in Section 14.3, nothing herein after shall prevent: [a transfer under the limitations set forth in section 14.1.1]."  Section 14.3(iii) then states: "Notwithstanding *any other provision of this Agreement,* no Partnership Interest may be transferred by sale, transfer, or otherwise if: such transfer would adversely affect the financial and operating integrity of the Partnership, any individual Partner, Parent, or Affiliate thereof."  (Emphasis added).  Thus, section 14.3 clearly contains requirements and approvals that must be met before the terms of section 14.1 may, in the first instance, be implemented.  Indeed, section 14.3 merely recites, in contract terms, the usual partnership law requirements of notice prior to a transfer that results in substitution of one individual or entity for an already existing partner, here, purportedly, the substitution of Illinova for LG&E.  Thus, before a transfer with additional limitations described in sections 14.1.1, 14.1.2 and 14.1.3 can proceed, if at all, the overriding requirements of section 14.3(iii) must be met.  The court does not indicate how this can possibly be done without giving the partnership and all existing partners notice before this transfer occurs.  Under the court's apparent scheme, a transfer, without notice, would occur only to be unraveled if the requirements of section 14.3(iii) and section 14.1.1. are not ultimately met.  I find no statutory or case law in support of this approach and it seems totally at odds with a reasonable reading of the partnership agreement and usual partnership concepts.

[8]TFP is a Texas limited partnership, and we apply Texas law as the TFP partnership agreement so provides.  TFP Limited Partnership Agreement, § 17.4.3. In contrast, the option agreement between Tenaska and LG&E provides for the application of Nebraska law under the terms of the contract.  Option and Agreement, § 6.5.

will be treated as a corporation for tax purposes due to the freely transferable partnership interests. See MCA Inc. v. United States, 685 F.2d 1099, 1101 (9th Cir. 1982) (citing the free transferability of interests as one characteristic of a corporation for tax purposes); Outlaw v. United States, 494 F.2d 1376, 1380 (Ct. Cl. 1974) (same). Thus, under the partnership agreement, in order for LG&E's transfer of its partnership interest to Illinova to occur, the partners and the partnership must agree that such transfer upholds the financial and operating integrity of the partners and the partnership. The only way the partners and the partnership could make this determination is if they had notice of the transfer. Then, and only then, can the additional limitation conditions set forth elsewhere in section 14.1 (and in part specifically referenced by LG&E and Illinova in section 2.2 of the MOA) be implemented. This notice requirement is further evidenced by the Texas Revised Partnership Act, which requires notice in order for the partnership to give effect to a transfer of a partnership interest. Tex. Rev. Civ. Stat. Ann. 6132b-5.03 ("Until receipt of notice of a transfer, a partnership does not have a duty to give effect to a transferee's rights under this section.").

When LG&E entered into the MOA with Illinova, and subsequently exercised its option with Tenaska, LG&E did not provide TFP or Tenaska with notice of the transfer of LG&E's interest to Illinova. As a result, neither TFP nor Tenaska had an opportunity to determine whether the transfer would adversely affect the financial and operating integrity of the partners or partnership. LG&E's disclosure just prior to financial closing is of no consequence, as the transaction between LG&E and Illinova had already occurred at that time. We may not assume that even if LG&E validly exercised its option and gained its ten percent interest in TFP, TFP would necessarily have favored this particular transfer to Illinova.

To specifically address the basis of this dissent, I note that the MOA between LG&E and Illinova, executed before LG&E exercised its option with Tenaska, unquestionably violates the anti-assignment provision of the option agreement

-19-

between Tenaska and LG&E. First, it is certain that LG&E would not have exercised the option without the guarantee from Illinova that it would, in fact, purchase LG&E's interest and perform all of LG&E's partnership obligations. Thus, the acceptance of the MOA by Illinova immediately divested LG&E of its option and partnership duties and liabilities. Second, section 3 of the MOA obligates Illinova to pay a purchase price for the option as well as assume all of LG&E's liabilities and obligations under the TFP partnership agreement upon transfer of the partnership interest to LG&E. Illinova further agreed to reimburse and/or indemnify LG&E with respect to all of LG&E's funding obligations required upon the exercise of LG&E's option, and in fact did fund LG&E's obligations. The option funding obligations under the MOA are incurred prior to the transfer of the partnership interest, thus Illinova was obligated for all financial burdens associated with the option interest before LG&E even became a partner of TFP.

It is unduly simplistic to contend that because the MOA states that LG&E grants to Illinova the option to purchase LG&E's partnership interest after the transfer of such partnership interest, it is not a present assignment of LG&E's option. Ante at 10. Indeed, to do so exalts form over substance. Illinova paid a purchase price for the contractually unassignable option and immediately assumed all of LG&E's financial and legal obligations. The final transfer of the interest from LG&E to Illinova, then, was merely a formality, a formality that violated both the option agreement and the partnership agreement. It appears from the plain language of the MOA that the only uncertainty was whether LG&E would exercise its option at all with Tenaska. Once LG&E moved to exercise the option, Illinova instantly assumed total partnership financial and legal burdens and the terms of the MOA constituted LG&E's improper transfer of the partnership interest to Illinova without either the contractually or statutorily required notice. LG&E failed in its attempt to satisfy the letter of the option agreement pro forma. To hold that LG&E surreptitiously and successfully drafted its way around the option agreement rewards behavior I am not willing to sanction, especially given the mandates of well-established partnership law.

Stated simply, LG&E's attempted exercise of the option agreement is inextricably and improperly intertwined with the immediate transfer of LG&E's partnership interest to Illinova. As a result of the MOA, Illinova became the true holder of the interest in the TFP partnership. This transfer not only violates both the terms and spirit of the anti-assignment section of the option agreement, but also the limitation on transfers at section 14.3(iii) of the limited partnership agreement.

For these reasons, I would reverse the judgment of the district court granting summary judgment in favor of LG&E.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.